[Civ. No. 11208.   First Appellate District, Division Two.—February 2, 1940.]

PEARL W. MARTIN, Respondent, v. ALBERT MIQUEU et al., Appellants.

Weinmann, Quayle & Berry for Appellants.

Brown & Rosson for Respondent.

SPENCE, J.—Plaintiff sought damages for personal injuries sustained when an automobile, driven by defendant Miqueu·and owned by defendant Atlas Heating and Ventilating Company, collided with an automobile driven by plaintiff. Upon a trial by jury plaintiff recovered judgment against said defendants in the sum of $5,000, from which judgment said defendants appeal.

The complaint alleged that on December 1, 1938, plaintiff was driving her automobile in a westerly direction on Excelsior Avenue near the intersection of Spruce Street in the city of Oakland and that defendant Miqueu so negligently drove an automobile in an easterly direction along said Excelsior Avenue as to cause it to violently collide with plaintiff's automobile thereby causing plaintiff various injuries. Said complaint further alleged that the defendant company was the owner of said automobile and that defendant Miqueu was driving it with the consent of the defendant company and within the scope of his employment as an employee of said company. The joint answer of defendants denied the allegations relating to negligence, injuries, damage, and scope of employment. It admitted that the defendant company owned the automobile and that defendant Miqueu was driving said automobile with the consent of the defendant company.

After the jury was impaneled and before the opening statement, counsel for defendants asked "leave to file in the record defendant's admission of liability on behalf of the defendant Miqueu in a fair and reasonable sum to be determined by the Court or jury". He further stated that the "same writ-

ten stipulation admits liability'' on behalf of the defendant company ''subject to the limitations imposed by section 402 of the Vehicle Code'', and that he at that time offered ''to broaden the latter part of that written stipulation . . . and waive any question on the issue of agency and make an unqualified admission of liability'' on behalf of the defendant company without any limitation such as that imposed by section 402 of the Vehicle Code. He ended his statement as follows: ''If those stipulations are not accepted by my adversaries then each and every one of them is withdrawn.''

There is confusion in the record as to whether counsel for defendants was making an unqualified judicial admission or was merely making what he termed ''my offer to stipulate'' which was to be withdrawn if not accepted. He states in his brief that the written stipulation had been filed before he made the above statement. Counsel for plaintiff stated on the trial that they knew of nothing which required them to stipulate, and we find no acceptance of the stipulation in the record. Counsel for defendants requested the court ''to limit the issues in accordance with my offer to stipulate''. After some discussion, in which the situation was not clarified and in which counsel for defendants said, ''It is an offer, it is not in evidence, it is simply filed,'' the trial court denied defendants' request to limit the issues. Counsel for defendants then introduced in evidence the document theretofore filed entitled ''Stipulation as to Defendants' Liability''. Thereafter counsel for defendants objected to the portions of the opening statement relating to the circumstances surrounding the happening of the accident and also to the portions of the testimony relating to such circumstances. Said objections were overruled and counsel for plaintiff proceeded to present the plaintiff's case.

Some further confusion crept into the record concerning the nature and extent of the alleged admissions of the defendants. In their brief defendants state that ''before any evidence was introduced, defendants admitted negligence and liability''. The confusion arises at least with respect to the attitude of defendants on the issue of agency. At one point in the record, counsel for plaintiff asked, ''Are you now without qualification admitting the liability of your client?'' Counsel for defendants replied, ''I am admitting negligence

on behalf of both clients. I think there is no question as to agency involved, Mr. Rosson . . . I have admitted negligence and I have admitted all that the law will permit you to prove, but you don't choose to accept my stipulation . . . but if you want to go ahead, why, go ahead, but I still think it is irrelevant, incompetent and immaterial and you are wasting time.'' Shortly thereafter counsel for defendants stated, ''I have not waived the issue of agency. I deny that any agency relationship existed at that time between Mr. Miqueu and the Atlas Heating and Ventilating Company.''

We have set forth these statements in some detail as the main contention of defendants on this appeal is that ''The judgment should be reversed because defendants were denied a fair trial by the erroneous refusal of the trial court to limit the issue to damages.'' This contention is stressed by defendants as plaintiff introduced evidence showing the manner of the happening of the accident including evidence showing that defendant Miqueu was intoxicated at the time. Defendants contend that the trial court erred in refusing to limit the issues and in admitting this evidence, but in our opinion this contention cannot be sustained. In reaching our conclusion on this point we need not determine whether it may ever be error to permit a party to prove facts admitted by the pleadings or by judicial admissions. (See, discussion in *Martin* v. *Pacific G. & E. Co.*, 203 Cal. 291 [264 Pac. 246].) It is only necessary to point out that the record here is in such a state of confusion as to the nature and extent of defendants' admissions, if any, that there could be no error in denying defendants' request to limit the issues to that of damages alone. But furthermore, even if there was error in the refusal of the trial court to order some limitation of the issues, such error could not have been prejudicial. It appears to us from a reading of the record as well as from defendants' claims on this appeal, that they never intended to make any unqualified admission on the issue of agency or on the issue of the extent of plaintiff's injuries. If the testimony which defendants sought to exclude was properly admitted on these last-mentioned issues, there could be no prejudicial error in the trial court's order refusing to limit the issues. We may therefore briefly discuss these issues and the relevancy of said testimony to said issues.

■ On the issue of the extent of the injuries, plaintiff claimed a severe back injury and introduced evidence for this purpose. Defendants' theory was that such back injury was slight. It was therefore proper for plaintiff to introduce and she did introduce evidence concerning the manner of the happening of the accident in order to show the force with which defendant Miqueu struck the automobile of plaintiff.

■ On the issue of agency, plaintiff introduced evidence to show that the automobile belonged to the defendant company; that the name of the defendant company was painted on both doors thereof; that defendant Miqueu was employed as the local manager of the defendant company and had the general use of the company's automobile; that it was his practice to drive said automobile home at night and to start out and make calls for the company before going to the company's plant in the morning; that on the night of the accident said defendant left the plant of the defendant company in said automobile at about 10 P. M. and was on his way home and within four blocks thereof at the time the accident occurred. On this issue it was defendants' theory that at the time of the accident defendant Miqueu had embarked, or was about to embark, on a personal mission unrelated to his employment. Defendant Miqueu testified to the effect that he was over on the left side of the street and to the left of the white line thereon for the reason that he had decided to go back to the company's plant to get two or three personal bills which had been sent to him there; that he "was edging over for Barbara Road" with the intention of turning on Barbara Road and returning to get said bills. It was therefore proper for plaintiff to introduce, and she did introduce testimony to show that said defendant was intoxicated and had weaved back and forth from one side of the street to the other for some distance as he pursued his course up Excelsior Avenue. This testimony tended to show that said defendant's driving on the wrong side of the street was due solely to intoxication and not to any intention on his part to embark on a personal mission. It therefore appears that the testimony concerning the manner of the happening of the accident, all of which testimony defendants sought to exclude, was properly admitted upon one or the other of the issues as to which defendants had made no admissions.

■ Defendants further contend that "the judgment should be reversed because the jury was misdirected to the prejudice of defendants". It is apparently conceded that the instructions given by the trial court correctly stated the law. It is contended however that the court erred in refusing to instruct the jury "that defendants had admitted liability" and in "submitting the issue as an open one". It is further contended that the giving of the instructions on agency was error "because there was no evidence to justify submission of the question of agency to the jury". We do not believe that these contentions require discussion in the light of what has already been said. We conclude that the giving and refusing of said instructions relating to negligence was not error, and in any event was not prejudicial to defendants under the circumstances. We further conclude that it was not error to instruct the jury on the issue of agency as the above-mentioned evidence was ample to justify the submission of that issue to the jury.

■ The final contention of defendants is that "The damage award of $5,000 is excessive as a matter of law." The special damages amounted to $1789.53, leaving an award of approximately $3,200 for general damages. It would serve no useful purpose to set forth in detail the testimony as to the nature of the treatment given to plaintiff for her injuries or the testimony as to the amount and intensity of pain suffered by plaintiff. Suffice it to state that while plaintiff suffered no broken bones, the testimony showed that the injuries to her knee and to her back, and particularly the latter, required hospitalization and treatment over a long period of time and caused extreme and almost continuous pain. The accident occurred on December 1, 1938. She was ordered to the hospital on the following day and remained there until December 5th. She was then suffering pain but she attempted to return to her work as a music teacher in the public schools. She did return to work on a restricted basis for four days but then returned to the hospital and was confined there until January 31, 1939. At that time her physician sent her to St. Helena Sanitarium. She remained there under treatment until April 5, 1939, when she returned to Oakland. The cause was tried in May, 1939, and at that time she was still required to have heavy boards under the mattress of her bed, and she had great difficulty in sleeping. She was still

wearing a steel corset. She had difficulty in sitting and in walking. She testified that she had not had a single day free from pain since receiving her injuries. She was a woman of the nervous type, was 42 years of age, and she had suffered nervous collapses from the pain which she suffered. She returned to her work on April 24, 1939, but was only able to work about half time.

Three doctors who had treated plaintiff for her injuries testified with respect to her condition. The injury to her back was stated to be "low back sprain with concussion of the spine", and the doctor felt that "she had injured some of the ligaments deep in about the lumbosacral and sacroiliac joints". This resulted in a very definite muscle spasm of the back. This muscle spasm increased for a time, and her back tightened up so much that it would not bend at all. The doctors testified that she had not recovered at the time of the trial; that she was then required to continue to wear a steel corset and to sleep on boards; and that the injury was of the type which was apt to return in the future if she did any heavy lifting or slept in a sagging bed.

The record before us does not present a case involving a simple injury followed by a complete recovery within a short period of time. The back injury was a very painful one causing disability over many months, and the time when a complete recovery might be anticipated was a matter of conjecture. At the time of trial the doctor called by defendants would not attempt to put a limit on the length of time that plaintiff's nervous system would be affected as a result of the injury. He testified that plaintiff "seemed to me to be exaggerating", but even assuming some exaggeration, we cannot declare as a matter of law that the award was excessive under the settled rules which govern the action of appellate courts on such questions. (*Ware* v. *McPherson*, 213 Cal. 120 [1 Pac. (2d) 433]; *Bisinger* v. *Sacramento Lodge*, 187 Cal. 578 [203 Pac. 768]; *Hale* v. *San Bernardino Co.*, 156 Cal. 713 [106 Pac. 83]; *Eldridge* v. *Clark & Henery Const. Co.*, 75 Cal. App. 516 [243 Pac. 43].)

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 2, 1940.