[Civ. Nos. 14457, 14495. Second Dist., Div. 3. Oct. 25, 1944.]

SHIRLEY ANN JOHNSON, a Minor, etc., Appellant, v. JAMES F. McREE et al., Respondents.

William E. Empey for Appellant.

C. F. Jorz for Respondents.

SHINN, J.—Shirley Ann Johnson, aged seven years, suing by her guardian ad litem, recovered judgment in a jury case against defendants James F. and Bonnie Ann McRee in the amount of $600 for injuries she sustained when struck by an automobile driven by Mrs. McRee. Defendants admitted liability. Plaintiff has appealed from the judgment and urges (1) errors in the exclusion of evidence as to the manner in which plaintiff sustained her injuries; (2) the inadequacy of the damages allowed, and (3) misconduct of the attorney for defendants. She also gave notice of an appeal from an order denying her request to correct the reporter's transcript on the main appeal. The first and second points will be discussed together inasmuch as the same evidence relates to each of them.

Plaintiff was returning from school with other children and was crossing Lankershim Boulevard in the North Hollywood section of Los Angeles City. She was struck in a crosswalk by the McRee car near the center of the street and was thereby propelled about 40 feet southerly from the point where she was struck. She lay close to the center of the street when she was picked up and was carried to the nearby office of a physician. She was semi-conscious and in shock, was unable to walk, and was bleeding from lacerations on the right side of her temple and above her right eyebrow. Her arms and legs were badly skinned and she had many abrasions on her right shoulder, right knee, cheeks and other parts of her body. She received emergency treatment in the doctor's office and was then taken by ambulance to the receiving hospital at Van Nuys. There she received further treatment, was taken home and put to bed. Shortly afterwards she was laid in the back seat of her mother's car and taken to the office of their family physician, who placed her in the Glendale

Sanitarium, where she remained for a week, having a special nurse during the first night. After her return home she did not move her arms or legs for a week or two and suffered from loss of sleep and pain, occasionally awakening in the night screaming. She was confined to her bed at home for three weeks and retained the bandages on her wounds for more than a month. She suffered a concussion of the brain and developed a skin infection, impetigo, which lasted the better part of a month. Her accident occurred on November 24th and she returned to school early in January. About the middle of December she contracted scarlet fever, which confined her to her bed only two or three days. The wound on the right temple left a permanent scar and the laceration of the right eyebrow also left a scar with a black mark in it, the removal of which mark would require plastic surgery, which was also true of black marks on the right cheek. She had occasional headaches for some six or seven months after the accident. The nature and extent of her injuries were proved by physicians who treated her and by members of her family. The defendants offered no evidence.

In his opening statement to the jury, plaintiff's attorney stated that plaintiff was struck in a crosswalk. This elicited an objection by the attorney for defendants, which was only the first of many objections to any evidence as to the manner in which plaintiff received her injuries. The physician who came to the scene immediately after the accident and had plaintiff removed to his office was asked whether he made any observation as to how far plaintiff was lying from the crosswalk. The question was objected to and the objection was sustained. The obvious purpose of the objection was to exclude evidence as to the distance plaintiff was thrown by the car. It was, of course, important for plaintiff to prove as best she could the force of the blow which she received. In order to do this she had a right to prove that she was struck in the crosswalk and either knocked or dragged by the car for 40 feet or such other distance as the evidence would indicate. Defendants' admission of liability did not render irrelevant or immaterial evidence as to the circumstances of the accident insofar as they tended to prove the degree of violence with which the automobile struck plaintiff. And if she was dragged for a distance, that fact would be material. The force with which a blow was struck, where it is susceptible of proof, is

a fact to be considered with other evidence in determining how severe the injuries were. ■ But we think the facts to which the excluded evidence related were sufficiently proved by the testimony of other witnesses. Notwithstanding the objections on behalf of defendants, one of the eyewitnesses to the accident testified that plaintiff was struck in the crosswalk, he made a mark on a diagram indicating that she was struck in the intersection and testified, "After the accident I saw the girl about 40 feet below the intersection." Other witnesses testified that she lay at that point until she was carried away. When the witness testified that he saw plaintiff in the crosswalk at the time the accident happened, the court said: "I guess it is agreed that when the accident happened—— it must be because liability is admitted," and following that the witness testified, as above stated, that plaintiff lay 40 feet below the intersection after the accident. One of plaintiff's witnesses stated, in answer to a question as to the child's appearance while she was lying in the street, "It looked like she had been dragged on the pavement." This statement was stricken out on motion. The ruling was not erroneous nor was it prejudicial. Many blisters appeared in the burned areas upon plaintiff's body and the proof showed clearly that these were caused by plaintiff's being dragged on the pavement. The attending physician testified to that fact and also that the impetigo from which she suffered was caused by the dirt in these burns and scratches. The evidence as a whole presented a clear picture as to the circumstances of the accident. The direct evidence as to the distance plaintiff was thrown and the inescapable inference that she was also dragged along the pavement stood unopposed. We do not see how the jury could have doubted that plaintiff was struck in the crosswalk and was either knocked or carried by the automobile a distance of some 40 feet. Other rulings complained of related to the exclusion of evidence of facts which were otherwise satisfactorily established and we find in them no prejudicial error. When the excluded evidence is considered as a whole with the evidence that was received, it becomes apparent that the facts which plaintiff sought to establish were fully proved and that, in the absence of evidence offered by the defendants, her case was clearly established without the cumulative evidence that was excluded.

■ Plaintiff's injuries were such as would have justified

a verdict materially larger than the one rendered, but this fact would not constitute a sufficient ground for reversal. The appraisal of injuries for the purpose of fixing compensatory general damages is necessarily left to the discretion of the jury. It is a matter of common knowledge that individual opinions as to the amount which will compensate for injuries in a given case may rest at any point in a broad scale and that the consensus of opinion that will be reflected in a verdict is highly unpredictable. But the fact that the amount may be too high or too low, as verdicts go, does not indicate that the result has been reached through passion, prejudice or corruption. It would not be reasonable to suppose that the jury would have been prejudiced against this unfortunate little girl who had been injured without fault upon her part. Nor can it be argued that the amount was reached by compromise upon the issue of liability, since that was admitted. ■ The trial judge exercises a broad discretion upon motion for new trial to set aside a verdict which he believes to be against the weight of the evidence. A reviewing court has no such discretion. Here the trial judge, as the record affirmatively shows, viewed the scar upon plaintiff's forehead, which does not appear to have been a disfiguring one, and also the small black marks upon the skin which will have to be removed by surgery. ■ The decision upon motion for a new trial that the verdict as to the amount was not against the weight of evidence must necessarily have great weight upon appeal, where the contention is, in effect, that the evidence was disregarded by the jury. The limitations upon the power of a reviewing court to vacate a judgment for inadequacy of damages are too well understood to require elaboration. They are fully stated in *Sassano* v. *Roullard* (1938), 27 Cal.App.2d 372 [81 P.2d 213], and cases therein cited.

■ Plaintiff's notice of intention to move for a new trial specified misconduct of counsel for defendants. Plaintiff's attorney filed an affidavit stating, in part, ''C. F. Jorz, counsel for defendants, in his argument to the jury, stated to said jury that the defendants had tried to settle said cause and that the only reason that said case had not been settled was affiant's refusal to accept defendants' offer of compromise. That C. F. Jorz, defendants' counsel, also stated to said jury in his argument that defendants' offer of compromise had not been accepted by affiant because affiant personally was attempting

to support himself for a year out of the proceeds of said case. That said statements were inflammatory and prejudicial in nature, and although objected to, the jury was not instructed by the court to disregard said statements.'' No counter-affidavit was filed. We find in the reporter's transcript that the attorney for defendants, in his opening statement to the jury, made the following statement: ''We expect to show that ever since this accident occurred they have decided they want a lot of money.'' This statement followed immediately the statement of plaintiff's attorney, ''For these injuries we have sued for $15,000.00 and that amount we are asking in your verdict.'' No objection was made at the time to the statement of either attorney. It is of no assistance to the jury to be told the amount of a plaintiff's demand for unliquidated damages. And if they are advised, as they were here, that the demand is a large one, the natural consequence would be a rejoinder that the amount demanded is unreasonable and excessive. If, as stated in the affidavit of plaintiff's attorney, he was falsely accused of refusing to settle the case because of his wish to receive a large fee, the author of the statement was subject to rebuke by the court, but such a statement would not, in our opinion, warrant a reversal of the judgment. To hold that the jury would penalize plaintiff because of such an unfounded accusation of selfishness on the part of her attorney would convict them of the lack of that competence and fairness which they are presumed to possess. The trial court was in a better position to judge as to the effects of the remark than is this court. The motion for new trial was argued and the charge of misconduct no doubt was given full consideration. In our opinion the judgment cannot be disturbed upon this ground.

 Appellant sought to have included in the clerk's transcript an offer of proof which was made to the judge out of the presence of the jury and while counsel were conferring at the judge's bench. Plaintiff sought to have the following included as a part of the reporter's transcript:

''Mr. Empey: 'This officer will testify that he saw some marks where the child had been on the pavement; he will also testify that he examined the pavement for automobile skid marks, but found none; that he also examined the defendants' automobile and the left front fender was damaged.'

''Mr. Jorz: 'The crash is immaterial under the admission

of liability, and if he goes into the crash, I want all the issues tried.'

"THE COURT: 'I think so. We are only interested in the child's injuries.'

"MR. EMPEY: 'I have two eyewitnesses to this accident who will testify as to the speed of the defendants' car when it struck the child, and one witness will testify how the child was knocked and skidded along the pavement for 40 feet. Is it the Court's view that these matters are immaterial?'

"THE COURT: 'Yes. The only issue is the child's injuries; let's find out what her injuries were. Objection sustained.' "

The court denied plaintiff's request but allowed her request to be incorporated in the clerk's transcript. Plaintiff gave notice of appeal from the order refusing to correct the reporter's transcript. In plaintiff's brief she states, "The trial court refused to correct the transcript for asserted lack of recollection as to the conference in question." Apparently the reporter was not called to the bench to report plaintiff's offer of proof. The order is not one from which an appeal is authorized. (*Lake* v. *Harris* (1926), 198 Cal. 85 [243 P. 417].) In the circumstances plaintiff's remedy was by application to this court to prove the facts with reference to the alleged omission. (Code Civ. Proc., §652.) No such application has been made nor does the record contain any affidavit or other evidence which would have supported one.

The judgment is affirmed. The attempted appeal from the order refusing to correct the reporter's transcript is dismissed.

Desmond, P. J., and Wood (Parker), J., concurred.