878 A.2d 588

Cathy MASON

v.

Chauncey R. LYNCH.

No. 24 Sept. Term 2003.

Court of Appeals of Maryland.

July 15, 2005.

38

David M. Kopstein (Bryan Perilman of Dross, Levenstein, Perilman & Kopstein, on brief), of Seabrook, for petitioner.

Thomas R. Mooers (Brian C. Malone of Mooers & Associates, on brief), of Washington, D.C., for respondent.

Argued before BELL, C.J.,* ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

---

\* Eldridge, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

Opinion by ELDRIDGE, J.

The petition for a writ of certiorari in this negligence tort action presented a single question as follows:

"In a personal injury case arising from a motor vehicle accident, may a defendant place in evidence photographs showing minimal property damage and argue [in closing argument to the jury] that the photographs support an inference that the plaintiff was not injured, absent expert testimony establishing a correlation between property damage and personal injury?"

We granted the petition and shall hold that, under the circumstances of this case, the admissibility of the photographs was within the trial judge's discretion and that the trial judge did not abuse his discretion. We shall further hold, in light of the admission of the photographs and other evidence, that the closing argument by defendant's counsel was not improper.

## I.

■ The motor vehicle accident giving rise to this tort suit occurred at the western end of the Woodrow Wilson Bridge, in the eastbound lanes, as the parties were traveling from Virginia to Maryland.[1] The accident involved three motor vehicles

---

1. The Woodrow Wilson Bridge, which is part of Interstate Route 95, spans the Potomac River in basically an east/west direction, and provides a road connection between the States of Maryland and Virginia. Most of the Woodrow Wilson Bridge is in Maryland, although small portions of the Bridge, at the western end, are in the District of Columbia and in Virginia.

In the Circuit Court, the plaintiff took the position that the accident occurred in Virginia. The plaintiff filed a notice of her intention to rely on "foreign law" and requested jury instructions based on Virginia's substantive tort law. The trial judge rejected the request for jury instructions based on Virginia law and instructed the jury in accordance with Maryland law. No issue was raised in the Court of Special Appeals or in this Court concerning the trial judge's choice of law ruling.

Moreover, the sole issue raised in this Court concerns the admission into evidence of the photographs and defense counsel's argument based on the photographs. This is an issue governed by the law of the forum and not by the law of the place where the accident occurred. *See, e.g., Vernon v. Aubinoe,* 259 Md. 159, 162, 269 A.2d 620, 621 (1970); *Joffre*

in a rear-end chain collision. The plaintiff-petitioner, Cathy Mason, was operating the front automobile which was stopped, in the left eastbound lane, because of heavy traffic. Cathy Mason's brother, Gregory James Mason, was a passenger in her car. Stopped directly behind Cathy Mason's car was an automobile operated by Warren Goldman. The automobile operated by the defendant-respondent, Chauncey R. Lynch, had been in the adjacent lane of traffic. Lynch decided to change lanes, pulling his vehicle into the left lane behind Goldman's car. While Lynch was changing lanes and looking backward, his vehicle struck the Goldman vehicle in the rear. Even though Goldman's foot was on the brake pedal, the impact caused Goldman's car to strike the rear of Mason's car, pushing Mason's car forward. During Goldman's attempt to control his automobile after the initial impact, Goldman's car struck Mason's car in the rear a second time.

Mason filed in the Circuit Court for Prince George's County this tort action against Lynch, alleging that Mason suffered personal injuries as a result of the accident and that these injuries were proximately caused by Lynch's negligence. Lynch answered by, *inter alia,* denying that he was negligent or that his actions caused Mason's injuries.

Prior to trial, counsel for both parties agreed not to call health care providers as witnesses at the trial and not to conduct discovery or depositions of experts. Instead, they stipulated to the submission of medical records and bills, including bills and reports from each of Cathy Mason's treating doctors, a report of an independent medical evaluation conducted at the request of defendant's counsel, and reports by Mason's doctors rebutting the defense's independent report. Counsel further agreed to a maximum jury verdict of $60,000. The doctors' reports submitted by Mason supported her contention that she had been injured as a result of the

---

*v. Canada Dry Ginger Ale, Inc.,* 222 Md. 1, 6–8, 158 A.2d 631, 634–635 (1960); *Restatement (Second) of Conflict of Laws,* § 138 (1971); Robert A. Leflar, Luther L. McDougal III, Robert L. Felix, *American Conflicts Law,* § 123, at 337–340 (Fourth Edition 1986).

accident. One of those reports set forth the doctor's view that "there is no relationship between [the] degree of vehicle damage and [the] degree of patient injury." The doctor who had examined Mason at the defendant's request concluded in his report that most of the treatment received by her was unrelated to the collision.

Also before trial, the plaintiff's attorney had filed a motion in limine, seeking an order precluding the defendant's attorney from offering in evidence at the trial photographs showing minimal damage to the plaintiff's automobile immediately after the accident. The motion also sought to preclude the defendant's attorney from arguing "to the jury that the limited property damage shows [that] the force of the impact was insufficient to cause Plaintiff's injuries." The plaintiff's motion in limine relied upon a recent opinion by the Supreme Court of Delaware, *Davis v. Maute*, 770 A.2d 36 (Del.2001), holding that, in a motor vehicle accident personal injury case, "where liability is conceded and the sole issue is the extent of the plaintiff's personal injuries attributable to the accident," photographs showing minimal damage to the plaintiff's vehicle are not admissible to support an inference that the plaintiff's personal injuries resulting from the accident were also minimal, absent expert testimony warranting such an inference. *Davis*, 770 A.2d at 40–42. The Delaware court also held, with regard to a defense counsel's argument to the jury, as follows (*id.* at 40, footnotes omitted):

"As a general rule, a party in a personal injury case may not directly argue that the seriousness of personal injuries from a car accident correlates to the extent of the damage to the cars, unless the party can produce competent expert testimony on the issue. Absent such expert testimony, any inference by the jury that minimal damage to the plaintiff's car translates into minimal personal injuries to the plaintiff would necessarily amount to unguided speculation."

Defense counsel opposed the motion in limine, arguing that, in Maryland personal injury actions growing out of motor vehicle accidents, photographs of the vehicles after the accidents have always been deemed admissible as relevant evi-

dence. The defendant's attorney asserted "[t]hat plaintiffs routinely introduce photographs of the vehicles that they were in when it shows substantial property damage specifically for the purpose of showing that the plaintiff could have had the injuries that were sustained." Defense attorney claimed that it is "common knowledge" that there is some relationship between "the particular extent of vehicle damage and the likelihood of a particular injury." The defense concluded:

"That it's also interesting to note that the parties in this case have agreed that *no* experts would be called pursuant to an agreement to allow the medical bills in for a limit on recovery. That it's interesting to note that once this agreement was put into place that no experts would be called, Plaintiff now files this Motion in Limine in part based upon the fact that no experts would be called. This is unfair and clearly improper."

"Finally, Maryland courts have never precluded the use of photographs of vehicles in auto accident cases."

The trial judge denied the motion in limine. Later at the trial, during the cross-examination of Cathy Mason, the witness testified to the accuracy of two photographs showing "the damage done to your [Mason's] car as a result of the accident." The photographs were admitted into evidence over the objection of plaintiff's counsel.

Cathy Mason testified at trial that, although she was wearing a seat belt, she moved forward each of the two times that her automobile was struck, although she did not "hit anything in the car." Mason's attorney asked her whether she felt "hurt at the scene of the accident," and Mason replied: "No. I was not hurt at the scene of the accident." Mason testified that, after the exchange of information among herself, Goldman, and Lynch, she "went home to watch TV," and that she had no "expectation" that she was "going to need any medical attention." She testified that when she woke up the next day, she had a headache, and that, later that day, she was having neck pain. She left work early the day after the accident, went to an emergency room of a local hospital, and received

medication. Later she visited her primary physician about "head pain, the neck pain, [and] upper shoulder pain," and her physician referred her to a physical therapy center where she received treatments, although she stated that the treatments did not alleviate the pain. Several months later, her lawyer referred her to a neurologist and an "orthopedic doctor" who treated her. She was also treated by a dentist at the time. At the conclusion of Mason's direct testimony, her medical bills totaling $13,846.60 were introduced into evidence. Mason also claimed lost wages amounting to $373.97.

Cathy Mason's brother, Gregory Mason, testified that it had been "stop-and-go traffic" when the accident occurred, and that the Mason vehicle had been stopped for "a few seconds" when it was twice struck in the rear. Gregory Mason stated that both he and his sister moved forward when the car was hit. Gregory also stated that the vehicles were driveable after the accident.

Warren Goldman testified at the trial with regard to being struck by Lynch's car and, despite his foot being on the brake, striking Mason's car in front of him. Goldman testified that he saw no injuries on Mason such as a "cut or bleeding" but that she "was unhappy." He further testified that the property damage to his car, both in the rear and the front, was repaired at a cost between $500 and $1,000.

Chauncey Lynch testified as to how the accident occurred. He further testified, without objection, that the only damage to his vehicle consisted of "paint scratches" and that his air bag did not "deploy." Lynch stated that no one at the accident scene "complained of any injury, or any pain, or discomfort." He testified that all of the vehicles were driveable and that everyone drove away from the accident scene.

Following the above summarized testimony, the plaintiff moved for a directed verdict in her favor as to liability. The trial judge denied the motion.

During closing argument to the jury, defense counsel argued, *inter alia,* as follows (italics represent the portion which plaintiff challenges in this Court):

"[A]s far as putting a value on the case, I want you to start at the accident scene. Use your common sense, draw on your every day experiences, because one thing everybody agrees on, rush hour traffic. And everybody knows what rush hour traffic is like, stop and go, stop and go, stop and go, stop and go.

*"My client hits Mr. Goldman's vehicle. Apparently, Mr. Goldman's vehicle then hits Miss Mason's vehicle. There is very little damage. You will have the photographs of Miss Mason's vehicle back there. And I am going to ask that you look at that vehicle and ask you if that's consistent with $13,000 in medical expenses. Again, use your common sense, draw on your every day experiences.*

"Keep in mind she is seat belted. Keep in mind she does not hit her head, she does not hit her jaw, she does not hit any part of her body as a result of this accident. Keep in mind that she's not claiming—wasn't claiming any injury at the scene, was not cut or bleeding, was not complaining of any problems, any discomfort at the accident scene.

"And if you decide to put a value on this case—now, she does have medical treatment the day after, June 24. Then [she] sees Doctor Choi, her family doctor two times in July. Only two appointments in July. Then in August [she] has the physical therapy. Ask yourself what happens then.

"Then we have the entire month of September, the entire month of October. There is no medical treatment whatsoever. What does she do? She goes to see a lawyer, and she goes to a lawyer to get a referral to a doctor. Now, again, I am not a doctor. [I] ask you to use your common sense, draw on your every day experiences. If you have a medical problem, do you go to a doctor or a lawyer? I submit if you have a medical problem, you go to a doctor.

"You say, hey, Doctor Choi, look. I have been through the physical therapy. Physical therapy, it is not working. It is not working. Refer me to a doctor. If you can't refer me to a doctor, I'll go to a medical referral service, something.

"What happens when she does go to the lawyer? A lawyer refers her to a Doctor Macedo, and suddenly what was [a] $2,000 in medical case jumps to a $13,000 medical case. What you have to ask yourself is any of medical treatment by these doctors causally related to the accident?"

The case was given to the jury with a verdict sheet prepared and submitted by the plaintiff's counsel, and not objected to by the defendant's counsel. After deliberations, the jury returned its verdict, in pertinent part as follows:

"1. Was Defendant Chauncey Lynch negligent in this case?

    __✓__ Yes      _____ No

If you find 'yes' to Question No. 1 go to Question No. 2. If you find 'no' in Question No. 1, go no further.

"2. What amount do you award Plaintiff Cathy Mason:"

| | |
|---|---|
| For past medical bills | $ 0 |
| For past lost wages | $ 0 |
| For non-economic damages | $ 0 " |

Thereafter, judgment was entered in favor of the plaintiff only for costs.

The plaintiff filed a motion for a new trial on two grounds. First, the plaintiff argued that

"it was undisputed by the defense's own expert that Plaintiff had sustained at least $1,983.60 in medical treatment cost damages as a result of this accident and, therefore, Plaintiff was entitled to a verdict in at least that amount **as a matter of law.**"

Second, the plaintiff repeated her earlier argument that "the photographs showing minimal damage to Plaintiff's vehicle" should not have been admitted into evidence and that, "[g]iven the absence of any expert testimony in this case establishing a correlation between vehicle damage and personal injury," defense counsel "should have been prohibited from inviting the jury to speculate about the existence of such a correlation."

In opposing the motion for a new trial, the defendant initially stated that he had consistently taken the position that he was not negligent and that his actions did not injure the plaintiff. The defendant pointed out that the jury had been instructed that " 'it will be your duty to determine what, *if any*, award will fairly compensate the Plaintiff for the losses,' " and that plaintiff's counsel had no objection to this instruction. (Emphasis in defendant's opposition). The defendant further asserted that the jury was instructed, without objection, that it was " 'not required to accept *any* expert's opinion.' " (Same). With regard to the second ground for the plaintiff's motion, the defendant reiterated the reasons previously set forth in his opposition to the plaintiff's motion in limine. The trial court denied the motion for a new trial without opinion.

The plaintiff appealed to the Court of Special Appeals which affirmed the judgment of the Circuit Court. *Mason v. Lynch*, 151 Md.App. 17, 822 A.2d 1281 (2003). With respect to the admission of the photographs showing minimal damage to the plaintiff's automobile, the Court of Special Appeals distinguished the Delaware case of *Davis v. Maute, supra*, 770 A.2d 36, on the ground that the defendant in *Davis* admitted liability, whereas the defendant in the present case contested liability. *Mason v. Lynch, supra*, 151 Md.App. at 22–23, 822 A.2d at 1284. The Court of Special Appeals further pointed out that other courts considering the issue have not taken the same position as the Supreme Court of Delaware; those other courts have treated the admission of such photographs as a matter within the trial court's discretion, and "have been more willing to accept the trial court's discretionary determination that the photographs were relevant to the question of damages." *Mason*, 151 Md.App. at 23, 822 A.2d at 1285.

The Court of Special Appeals also held that defense counsel's closing argument concerning damages was not improper, *Mason*, 151 Md.App. at 24–27, 822 A.2d at 1285–1287. The intermediate appellate court relied upon this Court's opinion in *Farley v. Allstate Insurance Co.*, 355 Md. 34, 733 A.2d 1014 (1999), and pointed out that in the case at bar, as in the *Farley*

case, the trial court had instructed the jury that the attorneys' closing arguments were not evidence in the case. In addition, the Court of Special Appeals explained (151 Md.App. at 27, 822 A.2d at 1287):

"Like the defense counsel in *Farley,* appellee's counsel attempted to cast doubt on the reasonableness and necessity of appellant's medical costs by persuading the jury to disbelieve appellant and appellant's lay and expert witnesses regarding the seriousness of her injuries. Also like the defense counsel in *Farley,* appellee's counsel attempted to cast doubt in many ways, including commenting on the photographs showing minimal damage to the vehicle, appellant's testimony that she did not hit her body on the vehicle at impact or claim any injury at the scene, and the timing of medical treatment and lawyer referral to health care providers. Appellee's counsel's comments regarding the photographs, which were admitted into evidence while appellant was on the stand, were general in nature, and counsel did not attempt to make specific arguments that would call into play scientific principles that might require expert testimony."

The plaintiff filed in this Court a petition for a writ of certiorari, posing the single question which we have set forth at the beginning of this opinion. The defendant did not file a cross-petition for a writ of certiorari. We granted the plaintiff's petition, *Mason v. Lynch,* 374 Md. 582, 824 A.2d 58 (2003), and shall affirm.

## II.

As pointed out above, the Court of Special Appeals seemed to uphold the admission of the photographs on two grounds. First, the appellate court distinguished the Delaware case of *Davis v. Maute, supra,* on the ground that liability had been conceded by the defendant in that case, whereas the defendant Lynch in the case at bar contested liability. Second, the Court of Special Appeals alternately appeared to agree with the majority of courts which have held that the admission of

such photographs is within the trial judge's discretion. We agree with the second ground. Regardless of whether liability had been conceded, the admission of the property damage photographs was within the trial judge's discretion, and there was no abuse of discretion in this case. The holding of the Delaware court in *Davis* is not consistent with traditional Maryland law concerning the admission of photographic evidence, and we decline to follow the *Davis* opinion.

■ Generally under Maryland law, in both civil and criminal cases growing out of occurrences at particular places, photographs of these places, such as accident or crime scenes, including photographs of things involved, injured persons, or victims, are normally considered to have some relevance. Along with other reasons for relevancy in particular cases, such "photographs have also been admitted to allow the jury to visualize the" nature of the occurrence, *i.e.*, the "atrociousness of the crime" or the extent of the accident. *Johnson v. State*, 303 Md. 487, 502, 495 A.2d 1, 8 (1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986). Moreover, "[i]t is an unquestioned rule that photographs may be introduced in evidence, either in a civil or criminal proceeding, to illustrate the description of a person, place, or object so as to explain or apply the evidence." *Corens v. State*, 185 Md. 561, 570, 45 A.2d 340, 346 (1946).

■ It is ordinarily within the discretion of the trial court to weigh the degree of relevance against any unfair prejudice which might arise from the admission of the photographs. *See* Maryland Rule 5–403. The trial court's ruling on admissibility will not be overturned on appeal absent a clear abuse of discretion.

These basic principles concerning the admissibility of photographs have been reiterated by this Court on numerous occasions. Thus in *Johnson v. State, supra*, 303 Md. at 502, 495 A.2d at 8, the Court summarized the controlling law as follows:

"We have consistently held that whether or not a photograph is of practical value in a case and admissible at trial is

a matter best left to the sound discretion of the trial judge.... A court's determination in this area will not be disturbed unless plainly arbitrary."

In *Hance v. State Roads Comm.,* 221 Md. 164, 172, 156 A.2d 644, 648 (1959), Judge Prescott for the Court stated:

"[P]hotographs, if properly verified [no question of verification is here involved] and relevant to the issues in a case, may be admitted in evidence if they assist the jury in understanding the case or aid a witness in explaining his testimony; and the question of whether they are practically helpful or instructive to the jury is left to the discretion of the trial judge and his rulings thereon will not be disturbed in the absence of a showing of an abuse of the discretion."

In a motor vehicle accident case, with regard to various challenges relating to the admission of photographs of the accident scene, this Court's reasoning underscored the admissibility of such photographs if properly verified (*Consolidated Gas Co. v. Smith,* 109 Md. 186, 199, 72 A. 651, 656 (1909)):

"It does not distinctly appear from the appellant's brief upon what ground these exceptions were taken, but the use of photographs 'wherever it is important to describe a person, place, or thing, in a civil or criminal proceeding, for the purpose of explaining and applying the evidence' ... is so well established and so fully recognized in our own decisions, that we assume the objection must have been not generally to their use in the case, but rather to their method of introduction. It is a matter of course that 'photographs must be shown by some extrinsic evidence to be correct representations of the place or subject as it existed at the time involved in the controversy.'"

*Sun Cab Co. v. Walston,* 15 Md.App. 113, 136–137, 289 A.2d 804, 817 (1972), *aff'd,* 267 Md. 559, 298 A.2d 391 (1973), was an action for the wrongful death of one person and for personal injuries suffered by several other persons, arising out of a collision between a taxicab and a truck. After a police officer testified that several photographs of the taxicab "accurately represented the condition of the taxicab when he [the police

.officer] arrived at the scene," the trial judge admitted into evidence, over objections, the photographs. 15 Md.App. at 136, 289 A.2d at 817. The trial judge also admitted into evidence some photographs of the accident scene but excluded other photographs of the accident scene. On appeal, the Court of Special Appeals rejected challenges to these rulings concerning the photographs on the ground that "the admissibility of photographs is largely within the discretion of the [trial] court." *Ibid.*

Numerous other Maryland appellate cases have upheld trial court rulings concerning the admission of photographs, relying upon the principle that the admission or exclusion of the photographic evidence is essentially a matter of the trial court's discretion. A sampling of such cases include *Conyers v. State,* 354 Md. 132, 187–188, 729 A.2d 910, 939–940, *cert. denied,* 528 U.S. 910, 120 S.Ct. 258, 145 L.Ed.2d 216 (1999) (Trial court's admission of photographs of the crime scene and the victim was not an abuse of discretion, as " '[t]he very purpose of photographic evidence is to clarify and communicate facts to the tribunal more accurately than by mere words,' " quoting *Johnson v. State, supra,* 303 Md. at 503–504, 495 A.2d at 9); *Evans v. State,* 333 Md. 660, 693, 637 A.2d 117, 133, *cert. denied,* 513 U.S. 833, 115 S.Ct. 109, 130 L.Ed.2d 56 (1994) (Admission of victim photographs upheld, as "the admission of photographs into evidence remains soundly committed to the discretion of the trial judge"); *Sisk v. State,* 236 Md. 589, 591, 204 A.2d 684, 685 (1964) ("[P]hotographs, when properly authenticated, are as a general rule held to be admissible under two distinct rules: one, to illustrate a witness' testimony ... and two, as 'mute,' 'silent,' or 'dumb' independent photographic witnesses"); *Sanner v. Guard,* 236 Md. 271, 277, 203 A.2d 885, 889 (1964) ("The admission or exclusion of photographs is a matter for the discretion of the trial judge"); *Marlow v. Davis,* 227 Md. 204, 208–209, 176 A.2d 215, 217 (1961) (Automobile accident personal injury case, where trial judge admitted some photographs of the accident scene, but excluded others which had been altered, and this Court affirmed because " 'questions relating to the admissibili-

ty of photographs are left largely to the discretion of the trial court'"); *State, Use of Charuhas v. Heffelfinger,* 226 Md. 493, 496–497, 174 A.2d 336, 338 (1961) (Automobile accident wrongful death case, where the trial court admitted photographs and a sketch of the accident scene, on the ground that "'[t]his tells how the accident happened,'" and the Court of Appeals "fail[ed] to find any abuse of discretion"); *Baldwin v. State,* 226 Md. 409, 411, 174 A.2d 57, 58 (1961) (Admission of murder scene photographs was held not to be an abuse of discretion); *Kirsch v. Ford,* 170 Md. 90, 94, 183 A. 240, 241 (1936) (Motor vehicle accident case in which three photographs of the accident scene were deemed properly admitted; two altered photographs of the scene were, according to this Court, improperly admitted but their "admission . . . was not 'such an abuse of discretionary power as to warrant the sustaining of exceptions'"); *York Ice Machinery Corp. v. Sachs,* 167 Md. 113, 126, 173 A. 240, 246 (1934) (Admission into evidence of a motor vehicle accident scene photograph "is a matter which rests in the sound discretion of the trial court"); *Mayor and City Council of Baltimore v. Biggs,* 132 Md. 113, 117–120, 103 A. 426, 427–428 (1918) (Photographs of automobile accident scene held admissible); *Weiller v. Weiss,* 124 Md. 461, 464, 92 A. 1028, 1028 (1915) (Tort action arising from a collision between an automobile and a race horse, with photographs of the injured horse held to be properly admitted, as "[t]he admissibility of photographs, for the purpose of explaining and applying the evidence, is fully recognized by our decisions"). *See also* McLain, *Maryland Evidence,* § 403:5, at 582 (2d ed. 2001) ("More frequently, photographs will be taken of the scene of the accident or the crime, of the parties, or of the property involved, and offered as evidence of the appearance of each of those. The photographs are then merely demonstrative evidence, illustrative of the . . . testimony, and are admissible in the trial court's discretion").

The discretion which Maryland law accords to trial courts, regarding the admission or exclusion of photographs, is very broad. Thus, in several cases where trial judges have excluded photographs, their exercise of discretion has also been

upheld on appeal. *See* cases collected in McLain, *Maryland Evidence, supra,* at 582–591. Among the scores of this Court's opinions involving the admission or exclusion of photographic evidence, it is extremely difficult to find cases in which this Court has held that the trial court's ruling, as to the admission or exclusion of photographs, constituted reversible error. The very few cases finding reversible error are ones where the trial courts admitted photographs which this Court held did not accurately represent the person or scene or were otherwise not properly verified. *See Pearson v. State,* 182 Md. 1, 9–12, 31 A.2d 624, 627–629 (1943) (A capital rape case in which the trial court admitted a photograph of the victim which was not an accurate representation of the victim at the time of the crime and was not properly verified, and this Court held that the admission was reversible error); *Wimpling v. State,* 171 Md. 362, 373–374, 189 A. 248, 254 (1937) (An arson case, in which the trial judge admitted photographs of the burned structure, and this Court held that the photographs were not "true representations of the scene or object which they purport[ed] to represent"). *See also Snibbe v. Robinson,* 151 Md. 658, 663, 135 A. 838, 839 (1927) (Photograph of motor vehicle accident scene, taken five months after the accident, when "the conditions of the foliage, shrubbery, and lighting, were different at the time of the accident than when the photograph was taken, and the photograph itself was obscure and indefinite in its details, . . ., should not have been admitted into evidence." Nevertheless, the "question [as to admissibility] was to some extent in the discretion of the trial court . . ., and we are unwilling to reverse the judgment on that ground alone. The judgment appealed from will therefore be affirmed").

◼ As earlier mentioned, the plaintiff herself testified that the photographs at issue accurately represented the damage done to her automobile as a result of the accident. None of the reasons for excluding the photographs recognized by Maryland law is applicable in this case. The photographs "allow[ed] the jury to visualize"[2] the nature of the accident.

2. *Johnson v. State,* 303 Md. 487, 502, 495 A.2d 1, 8 (1985).

The testimony, which was not objected to, described the apparent lack of personal injuries at the scene of the accident, the driveability of the three vehicles immediately after the accident, the minimal damage to Warren Goldman's automobile, the fact that airbags did not deploy, and the damage to Chauncey Lynch's vehicle consisting only of "paint scratches." The photographs "illustrat[ed]" these "description[s]" and this testimony.[3] A holding that the trial judge abused his discretion in admitting such photographs would represent an abrupt departure from prior Maryland law.

Although this Court has not previously addressed the specific argument made by the plaintiff and upheld by the Supreme Court of Delaware in *Davis v. Maute, supra,* 770 A.2d 36, namely that, absent expert testimony, there is no relationship between the personal injuries suffered in a motor vehicle accident and the extent of the property damage, other courts have addressed the argument and rejected it. Courts have generally held that photographs and testimony, showing or describing vehicular damage or the nature of the impact, are relevant with respect to the personal injuries suffered in a motor vehicle accident and, in the trial judge's discretion, are admissible.

For example, in *Gambrell v. Zengel,* 110 N.J.Super. 377, 265 A.2d 823 (1970), the New Jersey appellate court held that photographs and testimony showing the damage to the motor vehicle involved and the distance traveled were admissible and relevant to the severity of the plaintiff's claimed injuries. The court explained (110 N.J.Super. at 379–381, 265 A.2d at 824–825):

"The only purpose in admitting the photographs and police officer's testimony was to show the force of the impact through the damages to the vehicle and the distance traveled, which allegedly caused plaintiff's injuries. Defendants claim that it was unfair thus to permit the jury to infer that plaintiff sustained serious personal injury, since a

---

**3.** *Corens v. State,* 185 Md. 561, 570, 45 A.2d 340, 346 (1946); *Sisk v. State,* 236 Md. 589, 591, 204 A.2d 684, 685 (1964).

heavy impact between two vehicles is an unreliable barometer of the severity of physical injury sustained."

"It must be conceded that the force of the impact, when two automobiles collide, does not necessarily justify an inference that the occupants of the vehicles sustained serious physical injuries." As defendants' medical expert expressed it:

"I have known people who step off a curb and break a leg and a car can turn upside down and you can be lucky and walk away from it without a scratch; * * * "

"At the same time it is a generally accepted rule that evidence of the speed at which the colliding cars were traveling, the severity of the physical impact and the manner of the happening of the accident is admissible where there is an issue as to the seriousness of plaintiff's injuries. And this, too, despite admitted liability." See *Martin v. Miqueu,* 37 Cal.App.2d 133, 98 P.2d 816 (1940); *Johnson v. McRee,* 66 Cal.App.2d 524, 152 P.2d 526 (1944); *Phillips v. Lawrence,* 87 Ill.App.2d 60, 230 N.E.2d 505 (1967); *Hall v. Burkert,* 117 Ohio App. 527, 193 N.E.2d 167 (1962); *Hayes v. Sutton,* 190 A.2d 655, 656 (D.C.App.1963); Annotation, 80 A.L.R.2d, at 1224–1231 (1961) and 1968 supplement thereto, citing additional cases in accord.

* * *

"The possibility of some inflammatory effect on a jury as compared with the relevancy of the evidence and its generally accepted admissibility is best left to the discretion of the trial court. We find no abuse of discretion under the circumstances herein."

The Supreme Court of Washington reached a similar conclusion in *Murray v. Mossman,* 52 Wash.2d 885, 329 P.2d 1089 (1958), which was an action for damages arising from an automobile collision, in which the defendant admitted liability but contested the amount of damages. In upholding the admission of photographs and testimony showing the amount

of vehicular damage, the Supreme Court of Washington stated (52 Wash.2d at 887–888, 329 P.2d at 1091):

"Five photographs of the scene of the accident were admitted in evidence for the limited purpose of showing the force of the impact that resulted in damage to respondent— a whiplash injury. Certain witnesses were permitted, over objection, to mark the exhibits and to testify concerning the point of impact and the course appellant's car took after the accident."

"Our conclusion [is] that admission of the photographs and testimony pertaining thereto did not constitute reversible error . . . ."

\* \* \*

"With minor exceptions in the testimony (the admission of which is not sufficient to constitute an abuse of discretion), the photographs and the testimony concerning them tended to show the force and direction of the impact that resulted in respondent's injury."

See also, e.g., Johnson v. McRee, 66 Cal.App.2d 524, 527–528, 152 P.2d 526, 528 (1944) ("Defendants' admission of liability did not render irrelevant or immaterial evidence as to the circumstances of the accident insofar as they tended to prove the degree of violence with which the automobile struck the plaintiff. \* \* \* The force with which a blow was struck, where it is susceptible of proof, is a fact to be considered with other evidence in determining how severe the injuries were"); Martin v. Miqueu, 37 Cal.App.2d 133, 137, 98 P.2d 816, 818 (1940) ("Defendants' theory was that such back injury was slight. It was therefore proper for plaintiff to introduce . . . evidence concerning the manner of the happening of the accident in order to show the force with which defendant . . . struck the automobile of plaintiff"); Berndston v. Annino, 177 Conn. 41, 44–45, 411 A.2d 36, 39 (1979) ("The prevailing view appears to support the proposition that, even though liability is fully admitted, evidence of speed, physical impact, and the like is admissible as relevant to the probable extent of person-

al injuries. \* \* \* This accords with our view");[4] *Hayes v. Sutton,* 190 A.2d 655, 656 (D.C.App.1963) ("[E]vidence of the circumstances surrounding the accident, especially evidence relating to the force of the impact, ... [is] relevant because it bears on the extent of plaintiff's injuries"); *Phillips v. Lawrence,* 87 Ill.App.2d 60, 63, 230 N.E.2d 505, 507 (1967) ("Relevancy is established where a fact offered ... renders a matter in issue more or less probable. To be probable it must be tested in the light of logic, experience and accepted assumptions as to human behavior. \* \* \* Both logic and experience indicate that a person in a stopped car, struck by another car going at a speed in excess of 65 miles per hour, is more likely to receive more serious injuries than one similarly situated who is struck by a car going at a much slower speed"); *Hall v. Burkert,* 117 Ohio App. 527, 528–529, 193 N.E.2d 167, 168–169 (1962). *See also DiCosola v. Bowman,* 342 Ill.App.3d 530, 537, 276 Ill.Dec. 625, 794 N.E.2d 875, 881, *app. denied,* 206 Ill.2d 620, 282 Ill.Dec. 477, 806 N.E.2d 1065 (2003) (Personal injury motor vehicle accident case, in which the appellate court held that the admissibility of vehicular damage photographs is within the trial court's discretion, and "that the trial court *in this case* did not abuse its discretion" by excluding the photographs. The appellate court, however, emphasized that "[w]e do not hold that expert testimony must always be required for such photographic evidence to be admissible").[5]

---

4. Following the Delaware decision in *Davis v. Maute, supra,* 770 A.2d 36, the Connecticut courts have reaffirmed *Berndston v. Annino, supra,* and have disagreed with the *Davis* case. *See Flores v. Jenison,* 2004 WL 1559488 (2004) ("Although the plaintiff cites a Delaware Supreme Court case, *Davis v. Maute,* ... the law of this state is to the contrary," citing *Berndston* ); *Holman v. Agostini,* 2004 WL 614861 (2004) ("In our jurisdiction ... evidence of physical impact is admissible as to the extent of physical injury, *Berndston v. Annino,* ...; but see *Davis v. Maute* ...").

5. It is noteworthy that the Supreme Court of Delaware has recently appeared to narrow considerably its earlier holding in *Davis v. Maute, supra,* 770 A.2d 36. In *Eskin v. Carden,* 842 A.2d 1222, 1233 (Del. 2004), the Delaware Supreme Court stated:

"*Davis* does not hold that photographs of the vehicles involved in an accident may never be admitted without expert testimony about

The plaintiff's position in the case at bar, *i.e.*, that the photographs should not have been admitted and that defense counsel's closing argument based on the photographs was improper, is based on the plaintiff's contention that, absent expert testimony to the contrary, there is no "correlation between vehicle damage and the likelihood of occupant injury." (Petitioner's brief at 13). The contention that no correlation exists between vehicle damage and occupant injury, in turn, seems to be partly based on the notion that sometimes accidents with little property damage result in severe personal injuries, and sometimes accidents with great property damage result in minor personal injuries. The plaintiff heavily relies upon the report of one of her doctors who wrote as follows (*id.* at 4):

"A further important point—studies have shown that there is *no* relationship between the amount of dollar damage, physical auto damage, or speed of impact to the amount of injury sustained by the patient. Metal is metal and soft tissue is soft tissue—there is no relationship to mutual damage. If there were, we would expect that *in every accident* in which one or both vehicles were totaled, the passengers would be either killed or severely damages—*and we know that is not the case.*" (First emphasized phrase added; second emphasized phrase in original).

In other words, the plaintiff's theory seems to be that, because greater vehicular damage does not result in greater personal injuries, and lesser vehicular damage does not result in lesser

---

the significance of the damage to the vehicles shown in the accident and how that damage may relate to an issue in the case. *Davis* has been misinterpreted as a bar to the admission of photographs without expert testimony. It was only the disingenuous reference to a 'fender bender'—after a trial judges express ruling forbidding what that phrase implied—that prompted our holding. *Davis* should not be construed broadly to require expert testimony in every case in order for jurors to be permitted to view photographs of vehicles involved in an accident."

"In short, *Davis* should be limited to its facts, recognizing that there may be many helpful purposes for admitting photographs of the vehicles involved in an accident where the case does not require supporting expert opinion."

personal injuries, *in every accident,* there can be no correlation between vehicular damage and personal injuries; therefore, vehicular damage evidence is not relevant. This, however, is not the test for relevancy. Maryland Rule 5–401 defines "relevant evidence" as follows:

 " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

That there may be some automobile accidents, in which very minor impacts lead to serious personal injuries, and vice versa, does not mean that evidence concerning the impact is irrelevant to the extent of the injuries. Relevancy under the rule involves probabilities; complete certainty is not ordinarily required. As the Illinois appellate court explained in *Phillips v. Lawrence, supra,* 87 Ill.App.2d at 63, 230 N.E.2d at 506–507, "[r]elevancy is established where a fact offered ... renders a matter in issue more or less *probable,*" and that "evidence of the circumstances surrounding an accident is admissible," because it relates "to the *probable* extent of personal injuries." (Emphasis added).

Courts, almost uniformly, have taken the position that there is in motor vehicle accident cases, as a matter of probability, a correlation between the nature of the vehicular impact and the severity of the personal injuries. As the plaintiff herself acknowledges, "[t]here apparently exists among laypersons a belief ... that significant injuries are unlikely in the absence of substantial property damage." (Petitioner's brief at 10). Courts have generally taken the position that this belief is rooted in common sense—a position with which we agree. Moreover, in personal injury actions based on motor vehicle accidents, evidence, including photographs, of the accident scene and of the damage to the vehicles, is, within the trial court's discretion, admissible under Maryland law.

In sum, the trial court in the instant case did not abuse its discretion in admitting the photographs showing the damage to the plaintiff's automobile. Consequently, defense counsel's

closing argument based upon the photographs and other evidence concerning the collision was not improper. *See, e.g., Farley v. Allstate, supra,* 355 Md. at 56, 733 A.2d at 1025 (Closing argument by defense counsel was not improper, as, "[c]ontrary to the [plaintiff's] assertions, the record indicates that [defense counsel's] arguments as to the reasonableness and necessity of Mr. Farley's medical bills, treatment, and lost wages were based on facts in evidence").

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. PETITIONER TO PAY COSTS.*

BELL, C.J. and RAKER, J., dissent.

RAKER, J. dissenting, in which BELL, C.J., joins:

I would reverse the judgment of the Court of Special Appeals and reverse the judgment of the Circuit Court. I would hold that the trial court abused its discretion in permitting Lynch, respondent, to argue in closing argument that the photographs, depicting minimal property damage, were evidence that Mason, petitioner, was not injured. The photographs were not admitted improperly because the question of liability was at issue in the case; they were not admissible, however, to support any inference that because the property damage was minimal, the personal injury was minimal. Accordingly, I dissent.

Defense counsel argued that, based on everyday experiences and common sense, the damage on the vehicle was not consistent with $13,008 in medical expenses, although perhaps consistent with "a couple of thousand dollars." In my view, the argument is improper for several reasons. First, the weight of scientific literature is to the contrary. Second, there is no way that, based merely on the extent of property damage, a fact finder could assess the injury of a party and particularly, whether a party had a pre-existing injury that was exacerbated by the impact.

This issue was addressed by the Supreme Court of Delaware in *Davis v. Maute,* 770 A.2d 36 (Del.2001). The court held that absent expert testimony, a party may not argue that

the seriousness of personal injuries from a car accident correlates to the extent of the damage to the cars. *Id.* at 40. The rule announced by the Delaware court is sound and is supported by the current scientific literature. I would apply a similar rule.

The majority characterizes a subsequent Delaware case, *Eskin v. Carden,* 842 A.2d 1222 (Del.2004), as narrowing considerably the *Davis* holding. In my view, *Eskin* clarified *Davis* and did not narrow it. The *Eskin* court did not retreat from *Davis,* but rather stated as follows, "for guidance in future cases":

> "In *Davis,* defense counsel sought to argue that properly admitted photographs of slightly damaged cars supported a contention that the accident was a 'fender bender,' in order to persuade the jury that the forces causing damage to the vehicles in the accident could not have impacted the plaintiff sufficiently to have caused the injuries about which she complained. Before the 'fender bender' comment was made, the trial judge had specifically ruled that counsel could not present that very contention, based upon the photographs alone. The inference suggested by the too-clever-by-half phrase, 'fender bender,' inartfully attempted to circumvent the trial judge's ruling. *That was impermissible, because unsupported by expert testimony, that phrase left the Davis jury in a position to make 'unguided empirical assumptions on issues that are outside the common knowledge of laymen.' Although the common knowledge of 'laymen' may well include the common sense notion that the lesser the force in an accident, the less likely the average human body will suffer serious injury, that speculation does not account for other circumstances, such as pre-exiting injuries or the particularly susceptible individual."*

*Id.* at 1233 (Emphasis added).

Dr. Binderman, the only expert to testify to this issue at trial, testified that there is no correlation between the extent of injury a person suffers and the magnitude of physical damage to an automobile. He testified as follows:

"A further important point—studies have shown that there is *no* relationship between the amount of dollar damage, physical auto damage, or speed of impact to the amount of injury sustained by the patient. Metal is metal and soft tissue is soft tissue—there is no relationship to mutual damage. If there were, we would expect that in every accident in which one or both vehicles were totaled, the passengers would be either killed or severely damaged— and we know that is not the case. But Dr. Moses' studies out of UCLA Facial Pain Center clearly show there is no relationship between degree of vehicle damage and degree of patient injury."

Respondent presented no evidence to contradict Dr. Binderman's opinion.

Moreover, a review of some of the extant research studies support Dr. Binderman's opinion. *See, e.g.,* R. Evans, *Some Observations on Whiplash Injuries,* 10 Neurologic Clinics 975–77 (1992); J. MacNab, *Acceleration Extension Injuries of the Cervical Spine, in The Spine* 647–60 (R. Rothman & F. Simeone eds., 2d. ed.1982); H. Parmar & R. Raymakers, *Neck Injuries From Rear Impact Road Traffic Accidents: Prognosis in Persons Seeking Compensation,* 24 Inj. 75–78 (1993); D. Severy et al., *Controlled Automobile Rear-end Collisions, An Investigation of Related Engineering and Medical Phenomena,* 11 Can. Servs Med. J. 727–59 (1955).

For example, in *Low Velocity Impact, Vehicular Damage and Passenger Injury,* 16 Cranio: The Journal of Craniomandibular Practice 226, 229 (1998), David B. Miller, D.D.S., concluded as follows:

"There is no direct relationship between vehicular damage and injury to and prognosis for the occupant(s) of the damaged vehicle. Light vehicles at low speeds can generate considerable forces. These forces are sufficient to cause significant bodily injuries. Impact resistant bumpers and body frames are currently absorbing less force than in previous automotive designs. More kinetic energy is available for occupant injury. The occurrence of injury relates

primarily to the amount of kinetic energy developed in the collision, the ability to dissipate that energy, victim awareness, body posture at impact and a myriad of other factors. Each accident and each victim is unique, and each must be evaluated objectively and individually based on the unique biomechanics and physics of the collision."

In L. Nordhoff, Jr., *Motor Vehicle Collision Injuries, Mechanisms, Diagnosis and Management* 288 (1996), the author concludes that "[t]he assumption that injuries relate to the amount of external vehicle damage in all types of crashes has no scientific basis." In addition, the author concludes that "[t]here is little correlation between neck injury and vehicle damage in the low-speed rear-end collision." *Id.* at 290.

A review of the scientific literature expresses the view that there can be a strong *inverse* correlation between injury levels and measurable vehicle crush, especially in low speed, rear-impact collisions. *See, e.g.,* S. Foreman & A. Croft, *Whiplash Injuries: The Cervical Acceleration/Deceleration Syndrome* (3d ed.2002); Nordhoff, *supra;* M. Robbins, *Lack of Relationship Between Vehicle Damage and Occupant Injury,* Society of Automotive Engineers paper 970494 (1997). Principles of physics, engineering and medicine reveal that many factors influence the type and severity of personal injury, including the speed of collision, vector of crash (front, side, rear, etc.), mass ratios, vehicle "crashworthiness," and human factors such as size, age, gender, physical condition, and seating position of the occupant.

In sum, there is no correlation, as the majority suggests, between vehicular damage and personal injuries such that jurors can rely on a description of the damage to establish the extent of any injury. Accordingly, in the absence of expert testimony, I would hold that it is an abuse of discretion to permit counsel to suggest a correlation between vehicle damage and the extent of personal injury.

Chief Judge BELL has authorized me to state that he joins in this dissenting opinion.