## ABRAHAM M. MAKINS, JR. *v.* STATE OF MARYLAND

[No. 286, September Term, 1968.]

468

*Decided April 1, 1969.*

*Jack E. Richards* for appellant.

*Bernard L. Silbert, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Michael E. Kaminkow, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

PER CURIAM.

The appellant, Abraham M. Makins, Jr., was convicted in the Criminal Court of Baltimore by Judge Meyer M. Cardin, sitting without a jury, upon three separate Indictments charging him with daytime housebreaking and allied counts.

In Indictment No. 543 he was convicted of daytime house-

breaking (first count) and sentenced to three years under the jurisdiction of the Department of Correction.

In Indictment No. 278 he was convicted of attempted daytime housebreaking (second count) and sentenced to two years under the jurisdiction of the Department of Correction to run concurrently with the sentence imposed in No. 543.

In Indictment No. 277 he was convicted of daytime housebreaking (first count) and sentenced to one year under the jurisdiction of the Department of Correction to run concurrently with sentence imposed in No. 543.

From his convictions he has appealed to this Court.

On appeal appellant raises only two questions:

1. Was Indictment No. 277 an invalid and defective indictment, thereby rendering the appellant's conviction a nullity?
2. Was there legally sufficient evidence to convict the appellant upon each of the aforementioned indictments?

I

VALIDITY OF INDICTMENT No. 277

Indictment No. 277 charged the appellant with having broken the dwelling house of Eilie Scott situate at 839 Seagull Avenue, Apartment A-1, with intent to steal the property of said Eilie Scott. At trial, over objection, the State was allowed to amend the indictment to read "Apartment B-1" rather than "Apartment A-1." Additionally, the proof at trial indicated that the dwelling house was the premises of Isabelle Scott rather than Eilie Scott, although no amendment to the indictment was requested or made. The appellant contends that such inaccuracies are matters of substance, thus making the indictment invalid, and that the amendment allowed by the trial court was improper. We disagree.

Under Maryland Rule 714 a the court may permit an indictment to be amended at any time before verdict as to matter of form, but not as to matter of substance. In *Corbin v. State*, 237 Md. 486, 489 (1965) the Court of Appeals laid down the

rule as to what is substance when it said: "As to what constitutes substance and what is merely formal in an indictment, it may be said that all facts which must be proved to make the act complained of a crime are matters of substance, and that all else—including . . . the precise words, unless they alone will convey the proper meaning—is formal." The indictment as drawn clearly charged the appellant with the crime of daytime housebreaking with intent to steal the personal goods of another. Each of the elements of that crime, see *Reagan v. State,* 4 Md. App. 590, 594 (1968), was alleged, without regard to the particular apartment number specified, and none of the essential elements of the offense were changed by the amendment. See *Corbin v. State, supra* at 490; *Watkins v. State,* 4 Md. App. 47, 50 (1968). We note that the exact street address of the apartment was correctly given in the indictment and, additionally, that the appellant has neither alleged nor shown that the charge in the indictment insufficiently characterized and described the offense to an extent that it failed to give the appellant notice of what he was called upon to defend or that it would not prevent a future prosecution for the same offense. See *Corbin v. State, supra* at 490; 13 Am. Jur. 2d *Burglary* § 33 (1964). That proof of the particular apartment broken into may be necessary for conviction of daytime housebreaking provides no talisman for testing the substantiveness of the allegation in the indictment when the question before the court is the propriety of amending the allegation. See *Melia v. State,* 5 Md. App. 354, 360, 361 (1968), which is directly analogous. In that case an amendment to the allegation of ownership in a larceny indictment was approved, although "proof of ownership as laid in the indictment is an essential factor to justify a conviction." For the foregoing reasons, we hold that the specific designation of the apartment number is a matter of form only and that it was not error to allow the amendment.

With respect to the variance between the name of the owner of the apartment as alleged and as proven, such a variance is not material where, as here, the allegation and the proof were enough to show that the apartment broken into by the appellant was not his, that he had no right to enter it without the permission of the lawful occupier, and enough to identify the

dwelling broken into and the personal property therein so as to protect the appellant against a subsequent prosecution for the same offense. See *Melia v. State, supra* at 365.

## II

### SUFFICIENCY OF THE EVIDENCE— INDICTMENT No. 277

The appellant contends that there was insufficient evidence to convict him of the daytime housebreaking charged in Indictment No. 277.

At the trial Isabelle Scott testified that she lived in apartment B-1 in an apartment house located at 839 Seagull Avenue, Baltimore, Maryland. On November 29, 1967 she left her apartment around 9:00 a.m. to go to work. She was the last person to leave the apartment and when she left all the doors and windows were locked. When she returned to her apartment, sometime around 2:30 or 3:00 p.m., the door was open and her television set and radio were missing. She placed a value of $210.00 on these two items. She had given no one permission to enter her apartment or remove these items.

Ronald Sellman testified that he was playing basketball on the playground near Seagull Avenue in the afternoon of the day in question when he saw some boys running with a coat over their heads and carrying a television set. He did not know who they were. The only one he knew was Abraham (Makins), who was walking, not running, and who had nothing in his hand. He testified that the other boys ran and that Makins walked across the basketball court.

Marian Thomas testified that she lived at 911 Seagull Avenue about a half block from where Mrs. Scott lived. On November 29, 1967 she was in her house with a Mrs. Harris and a Mrs. Hinton when she saw four or five boys coming from the direction of Mrs. Scott's apartment. Two of them were carrying a heavy object which appeared to be a television set covered with a coat. They came past her house in the direction of the playground. When she first saw the boys they were 20 to 30 feet from the apartment house where Mrs. Scott lived. She identified the appellant as being one of the boys in the group but testified he was not one of the boys carrying what

appeared to be a television set. However, he was walking with them. While she did not look at her watch, she thought it was about 4:30 p.m.

Wilhemina Hinton, who lives at 909 Seagull Avenue, testified that on November 29, 1967, at around 4:00 p.m., she and Mrs. Harris were visiting Mrs. Thomas. They were sitting in the kitchen looking out of the kitchen window when they saw three or four boys coming from the apartment building where Mrs. Scott lives. They ran to the living room and opened the door and looked out and the boys were coming across the lawn. Two of the boys were carrying a heavy object but she could not say what it was because it was covered up. She saw them pass behind the houses across from them and go directly to the playground. She identified appellant Makins as one of the boys. She could not say which boys were carrying the object.

The appellant did not testify.

The applicable test in discerning whether there is sufficient evidence to convict is "whether the evidence either shows directly or supports a rational inference of the facts to be proved, from which the trier of fact could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged." *Williams v. State,* 5 Md. App. 450 (1968).

In the instant case the *corpus delicti* was established by Mrs. Scott's testimony.

With respect to the criminal agency of the appellant, there is a general rule in Maryland that an inference of guilt may be drawn from the possession of recently stolen property. Upon proof of the *corpus delicti,* the inference is strong enough to establish the criminal agency of the possessor and thus to sustain the conviction. *Boswell v. State,* 5 Md. App. 571, 576 (1968). To support the inference "the possession must be personal and with a distinct, implied or express assertion of property by the exercise of complete dominion and right of disposal." *Boswell v. State, supra* at 579. But, "as to accomplices, the possession of one is the possession of all." *Boswell v. State, supra* at 579.

In the instant case the testimony of at least two witnesses established that the appellant was one of a group of four or five persons, two of whom were carrying the television set. Under

the circumstances appellant at least had access to the set. See *Brooks v. State,* 235 Md. 23, 31 (1964). His association with the small group and his proximity to the stolen property appear to the Court to justify an inference that he was in possession of the stolen property. *Hale v. State,* 5 Md. App. 205, 209-10 (1968); *Brooks v. State, supra* at 31; *Wright v. State,* 222 Md. 242, 247 (1960); *Pointer v. State,* 238 Md. 23, 25-26 (1965). Thus we cannot say that the evidence was insufficient or that the trial court was clearly erroneous. Maryland Rule 1086.

### SUFFICIENCY OF THE EVIDENCE— INDICTMENT No. 278

The appellant contends that the evidence was insufficient to convict him of attempted daytime housebreaking under Indictment No. 278 because his acts were mere preparations, indifferent in their character, and did not go far enough to constitute an attempt.

At trial Annie Smith, who resides at 1038 Bethune Road, in Baltimore, testified that on December 18, 1967, at 2:15 p.m., she was upstairs in her house when she heard a key turning in the outside door. She came downstairs, went to the door, pulled aside the curtain on the door, and observed the appellant trying to open the door with a key. The appellant looked up, snatched the key from the door, and ran off.

An attempt to commit a crime consists of an act done in pursuance of criminal intent falling short of the actual commission of the crime, coupled with at least apparent ability to commit the intended crime. See *Farley v. State,* 3 Md. App. 584, 587 (1968); *Boone v. State,* 2 Md. App. 80, 114 (1967). The facts manifestly conform to the definition above and support appellant's conviction for attempted housebreaking of Mrs. Smith's house, and the trial judge was, therefore, not clearly erroneous in his decision. Maryland Rule 1086.

### SUFFICIENCY OF THE EVIDENCE— INDICTMENT No. 543

The appellant contends that the evidence was insufficient to convict him of daytime housebreaking under Indictment No. 543 because no intent to steal was shown.

At trial Lavinia S. Hawthorne, who resides at 3109 Virginia Avenue, in Baltimore, testified that on November 28, 1967 she was residing at 1016 Bethune Road, in Baltimore; that she was the last person to leave her apartment on November 28, 1967, at 7:30 a.m., and that her apartment was closed and locked when she left. When she returned at about 4:00 p.m., she discovered that her color television set, hair dryer, and bedspread were missing from her bedroom. She stated that she had given no one permission to enter her apartment or to take her goods.

After the appellant's arrest he gave to the police a statement, the voluntariness of which is not attacked on appeal, which was introduced into evidence. The relevant part of the statement was as follows:

> "* * * [a]bout 11:00 A.M. me and Glen Dyson put key in lock, and went into the Apt. building, I think it is 1016 or 1018 Bethune Road Apt. I-A. We walked in the bedroom, start searching the drawers, and we couldn't find anything so Glen said let's don't leave with nothing, let's take the TV. We took the TV, some pennies, and a hair dryer, also a bed spread. We locked the door back and left. * * *."

It is settled that the actual intention at the time of the breaking is the intention which is controlling, not whether any goods of value were found or stolen, and the intention may be inferred from the circumstances. *O'Brien v. State,* 1 Md. App. 94, 97 (1967). We think it clear from the circumstances of the breaking and entry and from the contents of appellant's statement, that it can be inferred that he intended to steal something from the apartment even though he may not, at the time of entry, have intended to steal the particular objects ultimately taken. The trial court was not clearly erroneous in finding the requisite intent. Maryland Rule 1086.

*Judgments affirmed.*