955 A.2d 802

Karl L. THOMPSON

v.

STATE of Maryland.

No. 1222, Sept. Term, 2006.

Court of Special Appeals of Maryland.

Sept. 3, 2008.

Meaghan McLaine, Washington, D.C. (Nancy S. Forster, Public Defender, on brief), for appellant.

Robert Taylor (Douglas F. Gansler, Atty. Gen., on brief), for appellee.

Panel: KRAUSER, C.J., BARBERA and JAMES A. KENNEY, III, (retired, specially assigned), JJ.

KRAUSER, C.J.

Appellant Karl Lymont Thompson was accused by his adult niece of having sexually assaulted her on five separate occasions when she was between the ages of five and thirteen and he was between the ages of fourteen and twenty-two. Because appellant was a minor when the first assault occurred, he was not charged with that offense but was charged with the others. Tried by a jury in the Circuit Court for Baltimore City, appellant was convicted of one count of second-degree rape, and two counts of third-degree sex offense, fourth-degree sex offense, and second-degree assault.

On appeal, he presents four issues:

I. Whether the circuit court erred in admitting uncharged juvenile conduct as other crimes evidence under Rule 5–404(b).

II. Whether the circuit court abused its discretion in admitting a photograph of the victim when she was ten years old.

III. Whether the circuit court erred in amending the indictment to change the date and location of the conduct charged.

IV. Whether gaps in the trial transcript deprive appellant of meaningful appellate review.

Finding no error, we shall affirm.

## BACKGROUND

On May 10, 2005, Kassandra Timm, then thirty-one years of age and a resident of San Diego, California, spoke by telephone with Detective Edward Scott Jones of the Baltimore City Police Department, informing him that, beginning in 1978, when she was approximately five years old,[1] until 1986,

---

1. Ms. Timm also mentioned an earlier assault that she believed occurred when she was approximately three; however, her description of this occurrence was vague. For this reason, the circuit court excluded reference to this alleged incident at trial. And that ruling has not been challenged by either party.

when she was thirteen, she had been sexually abused by her uncle, appellant Thompson, on numerous occasions.[2] She stated that she had not previously reported any of these incidents because she had been told by a mental health counselor that "it was too late" to do so. After that telephone conversation, Detective Jones arranged for Ms. Timm to be interviewed in person by Detective Phil Worts of the San Diego Police Department.

When Ms. Timm met with Detective Worts she told him that, as a child, she would occasionally stay at her grandparents' home during summer vacations and school holidays. Her grandparents first lived on Lynview Avenue in Baltimore City, with their son, appellant Thompson, but, in 1984, moved with him to a new house in Hampstead, Maryland. She informed the detective that at both residences she was sexually abused by appellant.

## TRIAL

At trial, the court permitted Ms. Timm to testify about five specific instances of sexual abuse. The first of the five incidents occurred in the summer of 1978, at the Lynview home, when Ms. Timm was "approximately five" years old and appellant was fourteen years old. Because of appellant's juvenile status at that time, the State never charged appellant with any crimes associated with this incident. The second incident took place during a school vacation in 1983, when Ms. Timm was ten years old and appellant was nineteen and an adult. The third and fourth incidents happened during the summers of 1984 and 1985 at her grandparents' Hampstead

---

2. The record establishes that it was Detective Jones who initiated the call to Ms. Timm for the purpose of inquiring whether Ms. Timm had been sexually abused by appellant. Ms. Timm had been identified as a potential prior victim of appellant's during the course of a separate investigation into molestation allegations made against appellant by his daughter. However, the circuit court excluded all evidence concerning appellant's daughter's allegations and ruled that the parties were only to refer to Ms. Timm's having "spoken to" law enforcement in May of 2005.

home, when Ms. Timm was about eleven years of age and appellant was twenty. The charges stemming from these incidents were dismissed during trial for lack of jurisdiction. The fifth incident occurred in November 1986, when Ms. Timm was thirteen and was staying at the Goodnow Road apartment of appellant, who was then twenty-two.

Appellant was thereafter convicted of the charges stemming from the second and fifth incidents, which occurred in 1983 and 1986, respectively, and which we shall hereafter refer to by those dates.

### The 1983 and 1986 Incidents

With respect to the 1983 incident, Ms. Timm testified:

My mother and I drove to Maryland ... to visit. The whole family was there. I remember a very full house ... we slept in [appellant's] room.... And there were a lot of other people in the room. We were all sleeping pretty much wherever there was floor space and I was actually sleeping next to my mother.

And it was lights out. Everyone was going to sleep and [appellant] kept saying my mother's name, Linda, are you asleep? Are you asleep yet? And he kept saying this. And it was like funny because everyone was in the room and [ ] he kept saying Linda, are you asleep yet? Linda, are you asleep yet? And when she stopped answer[ing] he came and he, he touched me with his hands between my legs. He molested me.... I mean he was touching me in my vagina with his hands. He was inserting his fingers between my legs.

With respect to the 1986 incident, Ms. Timm testified that it occurred while she was visiting appellant at his apartment on Goodnow Road in Baltimore City, during her Thanksgiving school break. Appellant was then living at that address with his girlfriend, Stephanie Perry.

Ms. Timm recalled that one evening, before appellant left for work, he provided her with a shirt to sleep in and told her she could share a bed with Ms. Perry. She then recounted

how later that night, when appellant returned home, he "got into bed" with her and Ms. Perry and how she later awoke to find "his penis inside of [her]," while Ms. Perry slept.

### The Uncharged 1978 Incident

Over appellant's objection, the circuit court permitted Ms. Timm to testify that she had been sexually abused by appellant as early as 1978, at her grandparents' Lynview home, when she was "[a]pproximately five" and appellant was fourteen years old. Although appellant was never charged, either as a juvenile or an adult, with any offenses stemming from this incident, the court ruled that such testimony was admissible under Maryland Rule 5–404(b). It reasoned that because "the . . . testimony would involve acts by the same Defendant against the same victim . . . and the acts [were] of the [same] general nature," the evidence was admissible as proof of "motive, opportunity, intent, common scheme, plan and absence of mistake or accident." Ms. Timm then testified as follows:

> I woke up to [appellant] touching me between my legs with his hands and with his penis. It hurt. I started to whimper a little bit and I said to him that I need to go to the bathroom. I didn't need to go to the bathroom. I just wanted to remove myself from the room. I went into the [ ] bathroom and . . . s[a]t on the toilet. I remember . . . my feet didn't touch the floor.

> And I left the bathroom, [ ] I went [ ] into my aunt's room . . . a different bedroom and I just laid on her floor. And then he came into the room after and asked why I didn't come back. I didn't answer and he climbed into my aunt's bed. . . .

### The Dismissed 1984 and 1985 Incidents

Ms. Timm was also allowed to testify about two incidents, the charges for which had been dismissed for lack of jurisdiction, earlier in the trial, because the purported offenses occurred in Hampstead, Maryland, and not in Baltimore City. The two incidents took place in the summers of 1984 and 1985

at her grandparents' Hampstead home, when she was between eleven and twelve years old and appellant was between twenty and twenty-one. She remembered:

We [she and appellant] were in the basement. There was someone else there, a child I believe, but I don't recall who it was. [Appellant] carried me up the stairs from the basement to a bedroom.... My grandmother was not home, nor was my grandfather.

And he laid me on the bed of the room that we went into. He was carrying me like this [indicating]. And he removed my clothes and proceeded to get on top of me ... and tried to put his penis inside of me. And he tried for a while and I just laid there. It didn't happen.... [H]is penis was touching my vagina but it didn't happen. It was hurting me. It wasn't going, it didn't happen. And then he stopped.

And the next day, he proceeded in the basement again. We were on the floor. There wasn't a bed down there. There was a sofa and floor space [ ] in the basement[.][A]gain, he removed my clothing. He began to perform oral sex on me and he used his fingers. Then, he got on top of me and he proceeded to insert this penis inside of me.... [W]hile he was inside of me, he asked me if it felt good. I didn't answer. When he was done doing that, he again began to ... perform oral sex on me. It felt like eternity. It felt like forever. Then he picked me up and put me onto the sofa and continued to [ ] perform oral sex on me. And then eventually he stopped.

Following Ms. Timm's testimony, the State offered and the court admitted, over appellant's objection, a school photograph of Ms. Timm when she was approximately ten years old. Before resting, the State presented the testimony of Ms. Perry, who confirmed that Ms. Timm had visited the Goodnow Road apartment that she shared with appellant.

## Amendment of Indictment

By the close of the State's case, it was clear from the testimony presented that the 1986 incident had taken place during Ms. Timm's Thanksgiving holiday at appellant's Good-

now Road apartment and not between May and August at his parents' Lynview Avenue home, as alleged in the indictment. After finding that appellant's counsel was in fact aware of this discrepancy before trial commenced, the circuit court, *sua sponte*, amended the indictment to reflect that the 1986 incident occurred in November at the Goodnow Road address.

## Verdict

After the court acquitted appellant of a number of charges that it determined were either duplicative or unsupported by the evidence presented, the case went to the jury. The jury found appellant guilty of having committed, in 1983, at the Lynview home, third-degree and fourth-degree sexual offenses, and of having committed, in 1986, at the Goodnow Road apartment, second-degree rape, third-degree and fourth-degree sexual offenses, and second-degree assault. After merging the offenses, the court sentenced appellant to consecutive sentences of twenty years' imprisonment for second-degree rape and ten years' imprisonment for third-degree sexual offense. This appeal followed.

## DISCUSSION

### I.

Appellant contends that the circuit court erred in admitting Ms. Timm's testimony that he sexually assaulted her in 1978, because, at that time, he was a juvenile and was, moreover, never charged with that offense. Appellant insists that, while such evidence may be admissible under Rule 5–404(b) if committed by an adult, it is not admissible, under the Courts and Judicial Proceedings Article, § 3–8A–23, if committed by a juvenile. Furthermore, even if his juvenile status at the time of the uncharged conduct did not render a testimonial reference to that conduct inadmissible under Rule 5–404(b), that evidence, he claims, should have nonetheless been excluded because the purported offense was not established by clear and convincing evidence and its probative value was outweighed by the unfair prejudice it generated.

The circuit court permitted Ms. Timm to testify that appellant sexually abused her in 1978, when she was approximately five years old and appellant was fourteen, even though appellant was a juvenile at the time of the offense and he was never charged with that offense. The court explained:

> For the record, under [Rule] 5–404(b) ... I have found that the State has established a prima facie case of admissibility under the delineated factors of motive, opportunity, intent, common scheme, plan and absence of mistake or accident, in that the ... testimony would involve acts by [appellant] against the same victim in the same residence during the same summer months and the acts being of the same general nature.

Rule 5–404(b) provides that, although "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith," such evidence may be admitted "for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident." For that to occur, however, the State must first demonstrate the evidence has "special relevance, *i.e.*, [that it] is substantially relevant to some contested issue in the case and is not offered simply to prove criminal character." *Harris v. State*, 324 Md. 490, 500, 597 A.2d 956 (1991).

But that is only the first step of a three-step analysis for determining whether prior criminal conduct is admissible under Rule 5–404(b). *State v. Faulkner*, 314 Md. 630, 634–35, 552 A.2d 896 (1989). The second step requires the court to determine "whether the accused's involvement in the other crimes is established by clear and convincing evidence." *Id.* at 634, 552 A.2d 896. If it is, the third and last step requires the court to "carefully weigh[ ]" both "[t]he necessity for and the probative value of the 'other crimes' evidence ... against any undue prejudice likely to result from its admission." *Id.* at 635, 552 A.2d 896. Appellant claims the circuit court erred in performing each of these steps.

## A. Admissibility of Conduct under a Recognized Rule 5–404(b) Exception

In admitting the testimony of Ms. Timm regarding appellant's uncharged sexual abuse of her in 1978, when she was five and he was fourteen, the court reasoned that that conduct fell within Rule 5–404(b)'s "recognized exceptions" because Ms. Timm's "testimony would involve acts by [appellant] against the same victim in the same residence during the same summer months and the acts [were] of the same general nature."

Appellant does not contend that, if he had been an adult at the time he first purportedly abused Ms. Timm, the prior uncharged conduct would not be admissible pursuant to Rule 5–404(b). And, indeed, precedent precludes such a claim. As the Court of Appeals has repeatedly held, there is an "exception to the rule excluding evidence of prior crimes when (1) the prosecution is for sexual crimes, (2) the prior illicit sexual acts are similar to that for which the accused is on trial, and (3) the same accused and victim are involved." *Vogel v. State,* 315 Md. 458, 465–66, 554 A.2d 1231 (1989); *see Hyman v. State,* 158 Md.App. 618, 857 A.2d 1166 (2004); *Acuna v. State,* 332 Md. 65, 629 A.2d 1233 (1993). In *Acuna,* the Court explained that "[i]n sex crimes cases" there is a "special relevance [to] other crimes evidence ... [where the defendant's] criminal propensity [is] particularized to similar sex crimes perpetrated on the same victim." 332 Md. at 75, 629 A.2d 1233.

■ Rather, appellant urges us to recognize a limitation on the admissibility of such evidence when the conduct in question was committed by a juvenile. In support of this argument, he cites Md.Code Ann. Courts and Judicial Proceedings Article ("Cts. and Jud. Proc."), § 3–8A–23 which prohibits the admission of a juvenile adjudication and disposition in any criminal proceeding for any purpose, unless the charge is perjury. It provides in part:

(a)(1) An adjudication of a child pursuant to this subtitle is not a criminal conviction for any purpose and does not

impose any of the civil disabilities ordinarily imposed by a criminal conviction.

\* \* \*

(b) An adjudication and disposition of a child pursuant to this subtitle are not admissible as evidence against the child:

(1) In any criminal proceeding prior to conviction; or

(2) In any adjudicatory hearing on a petition alleging delinquency; or

(3) In any civil proceeding not conducted under this subtitle.

(c) Evidence given in a proceeding under this subtitle is not admissible against the child in any other proceeding in another court, except in a criminal proceeding where the child is charged with perjury and the evidence is relevant to that charge and is otherwise admissible.

(d) An adjudication or disposition of a child under this subtitle shall not disqualify the child with respect to employment in the civil service of the State or any subdivision of the State.

Although Cts. and Jud. Proc. § 3–8A–23 only excludes prior juvenile adjudications and "[e]vidence given in [such] a proceeding" from being admitted in subsequent hearings, appellant asserts the statute should be read to prohibit any evidentiary use of "unadjudicated juvenile conduct." "The exclusion of uncharged juvenile conduct," he claims, "follows *a fortiori* from the exclusion of adjudicated juvenile conduct."

But that interpretation conflicts with a basic cannon of construction, which we have consistently applied in construing both statutes and rules. *See, e.g., Price v. State,* 378 Md. 378, 835 A.2d 1221 (2003); *Hurst v. State,* 400 Md. 397, 417, 929 A.2d 157 (2007). That canon provides that "[a] court may neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or expand its application." *Price,* 378 Md. at 387, 835 A.2d 1221. And expanding the application

of § 3–8A–23, by adding language it does not contain, is plainly what appellant is asking us to do.

As the Court of Appeals said of its statutory predecessor,[3] § 3–8A–23 "is designed to protect the confidentiality of juvenile proceedings." *Williams v. State*, 342 Md. 724, 742, 679 A.2d 1106 (1996). And, indeed, its very wordage confines its application to the admissibility of juvenile adjudications and dispositions. Entitled "Effects of adjudication and disposition," it states that "[a]n adjudication and disposition of a child pursuant to this subtitle are not admissible as evidence against the child [i]n any criminal proceeding. . . .," § 3–8A–23(b), and that "[e]vidence given in a [juvenile adjudication] . . . is not admissible against the child in any other proceeding in another court. . . ." § 3–8A–23(c). It plainly does not address the admissibility of juvenile misconduct for which the accused has never been charged. And that, of course, is precisely the nature of the evidence at issue. The 1978 incident of sexual abuse was juvenile misconduct for which appellant was never charged and which was never presented as evidence during a juvenile proceeding. Thus, the purpose and plain language of § 3–8A–23 does not provide a basis for extending its application to the uncharged juvenile misconduct in this case.

Finally, we decline to construe Cts. and Jud. Proc. § 3–8A–23 so that it prohibits the introduction of the very evidence that the Court of Appeals has declared to be of "special relevance" in a sex crime case involving the same perpetrator, victim, and criminal conduct. As our highest court has noted:

> The primary policy consideration underlying the rule against other crimes evidence "is that this type of evidence will prejudice the jury against the accused because of the jury's tendency to infer that the accused is a 'bad man' who should be punished regardless of his guilt of the charged crime, or to infer that he committed the charged crime due to a criminal disposition." *Tichnell v. State*, 287 Md. 695, 711, 415 A.2d 830 (1980). Yet, in the area of sex crimes,

---

**3.** In 2001, Cts. & Jud. Proc. § 3–8A–23 was renumbered from the former Cts. & Jud. Proc. § 3–824(b).

particularly child molestation, "courts have been likely to admit proof of prior acts to show a party's conformity with past conduct." 5 L. McLain, *Maryland Practice: Maryland Evidence, State & Federal* § 404. 1, at 344 (1987). Professor McLain suggests that this relaxation of the general prohibition is "probably because the character evidence is believed to have greater probative value in those circumstances." *Id.*

*Acuna,* 332 Md. at 75, 629 A.2d 1233.

The Court went on to observe: "Thus, in a sex offense prosecution when the State offers evidence of prior sexual criminal acts of the same type by the accused against the same victim, the law of evidence already has concluded that, in general, the probative value, as substantive evidence that the defendant committed the crime charged, outweighs the inherent prejudicial effect." *Id.*

Such evidence was particularly relevant here, for otherwise it might appear to the jury that, as the court below put it, "suddenly in 1982 out of context this conduct became the conduct of the Defendant after he had known this victim a substantial period of his life and suddenly inexplicably in 1982 this began."

Finding no Maryland case that supports his contention, appellant cites *State v. Hoagland,* 1984 Tenn.Crim.App. LEXIS 2755 (Tenn.Crim.App. Feb. 22, 1984), claiming that Tennessee courts have "recognized the necessity of [his proposed] rule," namely that "the exclusion of uncharged juvenile conduct follows *a fortiori* from the exclusion of adjudicated juvenile conduct."

In *Hoagland,* the Court of Criminal Appeals of Tennessee considered whether, at a criminal conspiracy trial, one conspirator could impeach the credibility of his coconspirator, who was testifying against him by introducing either the co-conspirator's earlier juvenile adjudication or the admissions he had made concerning uncharged juvenile conduct during the juvenile adjudicatory proceeding. It held such evidence inadmissible for impeachment purposes.

But the kind of evidence that the Tennessee Court of Criminal Appeals determined to be inadmissible for impeachment purposes would also be excluded under Maryland law, specifically, Cts. and Jud. Proc. § 3–8A–23(c), which, as discussed earlier, provides: "Evidence given in a [juvenile adjudication] ... is not admissible against the child in any other proceeding in another court...." *Hoagland* does not reach the question of whether evidence of uncharged juvenile conduct that is not admitted into evidence in a juvenile proceeding should be excluded as impeachment evidence. Thus, *Hoagland* has no applicability to this case; as here, the issue is the admissibility of unadjudicated juvenile conduct not juvenile adjudications or evidence admitted in a juvenile adjudicatory proceeding. Hence, we conclude that evidence of prior unadjudicated juvenile misconduct, which is admissible pursuant to Rule 5–404(b), is not rendered inadmissible by § 3–8A–23.

## B. Clear and Convincing Evidence of Appellant's Conduct

■ Appellant argues that, even if juvenile conduct falls within a recognized 5–404(b) exception to the general prohibition against the admission of prior bad acts, the circuit court erred, nonetheless, by admitting that evidence in this case, because the State failed to demonstrate by clear and convincing evidence that the conduct occurred. Appellant claims that Ms. Timm's "memory of the incident ... was foggy," and therefore the circuit court "was wrong to accept this faded recollection of events as clear and convincing evidence of their occurrence and details."

As noted earlier, for evidence to be admissible under Rule 5–404(b), it "must be clear and convincing to the trial judge." *Cross v. State*, 282 Md. 468, 478, 386 A.2d 757 (1978). "[C]lear and convincing evidence means that the witness to a fact must be found to be credible, and that the facts to which [she] ha[s] testified are distinctly remembered and the details thereof narrated exactly and in due order, so as to enable the trier of the facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Goroum v. Rynarzew-*

*ski,* 89 Md.App. 676, 684–85, 599 A.2d 843 (1991) (quoting *Berkey v. Delia,* 287 Md. 302, 320, 413 A.2d 170 (1980) (quoting, in turn, 30 Am.Jur.2d. Evidence § 1167 (1967))). We review the trial court's decision in this regard "to determine whether the evidence was sufficient to support the [trial court's] finding." *Faulkner,* 314 Md. at 635, 552 A.2d 896.

The circuit court found that the transcript of the interview that Detective Worts had conducted with Ms. Timm provided clear and convincing evidence that the 1978 incident occurred. In reaching that conclusion, the court relied, in part, upon the following excerpt from that transcript:

Timm: The earliest distinct memory that I have, I can't pinpoint an age, but I know it was . . .

Worts: Just give me your best guess.

Timm: Maybe five

Worts: And you say five because?

Timm: Because I remember an incident that happened, and I was little, I remember having to climb onto the toilet and he was doing things and it was the middle of the night and he was hurting me and I don't know if it was his penis or, I believe it was, and he was pushing up against my private area and it hurt. So I, I said I had to go to the bathroom and I went to the bathroom, I didn't have to go to the bathroom, I just was removing myself from that room. And when I went, when I left the bathroom I went into a different bedroom, And I went, I believe it was my aunt's bedroom and I laid on the floor, just to not go back to where he was.

Worts: Right.

Timm: And he came into . . .

Worts: So where did, you mention that you had to climb up onto the toilet, but that's not where [the abuse] occurred it was [in] his bedroom?

Timm: It was in the bedroom. In his, his bedroom. The boys' bedroom. Um, I don't, I can't remember who else was in that room, but I know that there were other people

that were sleeping, we have a big family, um, and I was on the floor and I think that's where I was sleeping

Worts: Okay.

Timm: You know, pillow, blanket. Um, and I went from that, instead of being in that room I went into my aunt's bedroom, she was the only girl living in the home at the time. And she was sleeping on her bed and I just crawled up next to her bed.

Worts: Okay.

Timm: And [appellant] came in a few minutes later and said, "Why don't you come back?" And I just didn't answer him. I remember that very clearly. And I think he climbed into my aunt's bed.

After reviewing the foregoing exchange between Detective Worts and Ms. Timm and after observing that Ms. Timm had described "in graphic detail an incident that occurred when she estimates her age to be age five," the circuit court concluded that there was clear and convincing evidence of the incident.

Appellant insists, however, that because Ms. Timm could not "pinpoint" her age at the time of the incident, the evidence of that incident was not clear and convincing. Ms. Timm stated to Detective Worts that she was "maybe five" at the time of the 1978 incident, and then, later at trial, she testified that, at that time, she was "approximately five." As recounted, her testimony as to her age was not as precise as it could have been, but, given the overall specificity and consistency of Ms. Timm's account of the incident, it hardly provides grounds for us to disturb the circuit court's determination that there was clear and convincing evidence that the 1978 incident occurred.

### C. Probative Value Outweighed Prejudicial Effect

■ Appellant also contends that the circuit court abused its discretion in admitting Ms. Timm's testimony, because its probative value was outweighed by the danger it posed of unfair prejudice. The testimony had little probative value,

according to appellant, because the abuse had occurred more than two decades ago and because of the "lack of detail provided by Ms. Timm." On the other hand, the danger of unfair prejudice was high, he asserts, because of the potential that the jury would conclude appellant had a propensity to commit sexual crimes.

■ In determining whether to admit evidence under Rule 5–404(b), a court must "carefully weigh the necessity for and probativeness of the evidence concerning the collateral criminal [or bad] act against the untoward prejudice which is likely to be the consequence of its admission." *Cross v. State,* 282 Md. 468, 474, 386 A.2d 757 (1978). The circuit court did so here.

The circuit court's words, in admitting Ms. Timm's testimony, reflect that it carefully weighed the probative value of this evidence against any risk it posed of unfair prejudice to appellant:

> With respect to whether or not the probative value of this testimony would outweigh the danger of unfair prejudice to [appellant], I found as follows.... [T]he probative value of the conduct goes to [appellant's] motive, opportunity, intent, common scheme, plan, absence of mistake, or accident.
>
> The prejudicial value. The actions identified by the victim against her don't differ much from the actions identified [as part of] the charged conduct. While it is certainly prejudicial in that the victim is a younger age during the uncharged conduct, there is nothing more inflammatory or more heinous about these actions that she's delineated [in] 1978 ... as opposed to the actions from 1982–1988.
>
> So the prejudicial value is not significantly enhanced other than the victim being younger. The actual actions of [appellant] are no more inflammatory, no ... different than what she's going to testify ... occurred during the charged period. I find that the probative value is not substantially outweighed by the danger of unfair prejudice....
>
> ... I also find the probative value to be enhanced because as the trial proceeds, clearly without [Ms. Timm's testimony

about] the earlier acts, the defense would be free to allege that suddenly in 1982 ... after [appellant] had known this victim a substantial period of his life, suddenly [and] inexplicably, in 1982, this [conduct] began.

The probative value ... is high in this case given the victim's late reporting of it ... [and] the prejudicial value [is] low, in that, in essence, these are basically the same acts that are alleged during the charged conduct and it is the same victim.

So, for all of those reasons, I admit the testimony of uncharged conduct from [when] the victim [was five years old] ... finding ... that the danger of unfair prejudice ... does not outweigh its probative value.

As to whether previous uncharged sexual offenses committed by an accused against the same victim may be admitted, *Vogel v. State* is particularly instructive. Vogel was charged with a single instance of sexually abusing a minor, but the trial court permitted the victim to testify that Vogel had sexually abused him on six other occasions. In so ruling, it took into account that the State's case rose and fell on the credibility of the complaining witness and that the testimony in question was highly relevant because it established Vogel's long-standing sexual preoccupation with the victim. *Vogel*, 315 Md. at 471–72, 554 A.2d 1231. Finding no abuse of discretion by the trial court, we observed: "Testimony as to a single sexual incident, occurring out of the blue ... might well have struck the jury as unbelievably incongruous, particularly if it followed two years of apparently meticulously proper behavior on the part of [the defendant]." *Vogel v. State*, 76 Md.App. 56, 68, 543 A.2d 398 (1988). And the Court of Appeals affirmed, stating:

[T]he challenged evidence illuminates the context of the matter at issue in a way as to allow the trier of fact to render a fair judgment based on a complete understanding of the parties' relationship. Indeed, the incident for which Vogel was convicted would have made little sense if taken out of context. Evidence of other offenses supplied that

context and as such were highly probative and crucial to the State's case.

*Vogel,* 315 Md. at 472–73, 554 A.2d 1231.

Similarly, in the instant case, the circuit court recognized that the credibility of the complaining witness was central to the State's case and, as in *Vogel,* her credibility depended on the jury's having a complete picture of the context in which her allegations arose. It found that Ms. Timm's testimony as to the 1978 uncharged sexual abuse was probative and necessary to prevent the defense, in the words of the court, from "alleg[ing] that suddenly in 1982 . . . after [appellant] had known this victim a substantial period of his life, suddenly [and] inexplicably, in 1982, this [conduct] began." This is precisely the "highly probative and crucial" use of prior sexual abuse evidence approved by the Court of Appeals in *Vogel.* 315 Md. at 473, 554 A.2d 1231. Hence, the circuit court did not abuse its discretion in admitting that testimony.

## II.

■ The circuit court admitted a school photograph of Ms. Timm depicting her at ten years of age wearing a red striped shirt and glasses, explaining that it found the photograph relevant because the "victim today who will testify is age 32" and the "picture give[s] the jury an opportunity to see the victim . . . in her childhood years as she appeared at a time close . . . to the time of the [1983] offense." With regard to the danger of unfair prejudice, the court found that the photograph was "simply . . . not inflammatory."

Appellant charges that, in admitting that photograph, the circuit court abused its discretion, because her appearance at the time of the crime was "wholly irrelevant" to any element of the crimes charged. It was not necessary to prove identity, he points out, because the victim was alive and present at trial to testify. Finally, he asserts that "[e]ven were the photograph relevant because it showed what Ms. Timm looked like near the time of the offense, its . . . probative value [was] negligible" and was outweighed by the "unfair[ ] prejudicial

sympathy" the picture of a child victim "was designed to elicit."

"[I]n determining the admissibility of any photograph, the trial judge must make a two-part assessment: first, the judge must decide whether the photograph is relevant, and second, the judge must balance its probative value against its prejudicial effect." *State v. Broberg,* 342 Md. 544, 555, 677 A.2d 602 (1996). A photograph is relevant if it " 'assist[s] the jury in understanding the case or aid[s] a witness in explaining his testimony . . . .' " *Mason v. Lynch,* 388 Md. 37, 49, 878 A.2d 588 (2005) (quoting *Hance v. State Roads Comm.,* 221 Md. 164, 172, 156 A.2d 644 (1959)). When relevant, "the general rule regarding admission of photographs is that their prejudicial effect must not substantially outweigh their probative value." *Broberg,* 342 Md. at 552, 677 A.2d 602. And that determination falls within the "very broad" discretion of the trial judge, *Mason,* 388 Md. at 51, 878 A.2d 588, which "will not be disturbed unless plainly arbitrary." *Johnson v. State,* 303 Md. 487, 502, 495 A.2d 1 (1985). After reviewing cases addressing this issue, the Court of Appeals commented:

> Among the scores of this Court's opinions involving the admission or exclusion of photographic evidence, it is extremely difficult to find cases in which this Court has held that the trial court's ruling, as to the admission or exclusion of photographs, constituted reversible error. The very few cases finding reversible error are ones where the trial courts admitted photographs which this Court held did not accurately represent the person or scene or were otherwise not properly verified.

*Mason,* 388 Md. at 52, 878 A.2d 588.

The circuit court abused its discretion in admitting Ms. Timm's photograph, appellant asserts, because the photograph was "cumulative" in establishing her identity and, therefore, "irrelevant." But cumulative evidence is not necessarily irrelevant. Indeed, cumulative photographs are admissible to assist the jury by illustrating or making more tangible rele-

vant evidence. *See Broberg,* 342 Md. at 553–54, 565, 677 A.2d 602.

In *Broberg,* the circuit court permitted the introduction of "in life" photographs of the eleven-year-old victim of a homicide. *Id.* at 549–50, 677 A.2d 602. On appeal, the defendant argued that, because he had stipulated to the identity of his victim, the photographs were irrelevant as cumulative. *See id.* at 550–51, 677 A.2d 602. The Court of Appeals disagreed that the cumulative nature of the photographs rendered them irrelevant, declaring:

> [A]lthough the relevance of the photographs derived from their use to prove the victim's identity, which was stipulated, the stipulation did not deprive the photographs of all relevance. . . . Photographs are inherently cumulative, whether used to illustrate testimony or, as in this case, in support of a stipulation. We reaffirm . . . that photographs need not possess essential evidentiary value to be admissible. . . . Furthermore, photographic evidence ordinarily does not provide the factfinder with new information, but rather with an alternative form of information. . . . The trial judge had discretion to determine whether this alternative form of information regarding the identity of the victim was wholly needless under the circumstances. . . . We hold that the trial judge's decision to admit the photographs was not an abuse of discretion.

*Id.* at 565, 677 A.2d 602 (internal quotations and citations omitted). *See Sisk v. State,* 236 Md. 589, 591, 204 A.2d 684 (1964) (holding that "[p]hotographs, when properly authenticated, are as a general rule held to be admissible . . . to illustrate a witness' testimony. . . ."); McLain, *Maryland Evidence,* § 403:5, at 582 (2d ed.2001) (stating that photographs of parties to a dispute that are "merely demonstrative evidence, illustrative of the . . . testimony . . . are admissible in the trial court's discretion.").

Appellant asserts, however, that the photograph should not have been admitted based on the Court of Appeals decision in *Buch v. Hulcher,* 180 Md. 309, 23 A.2d 829 (1942). In that

alienation of affection case, the trial court allowed the plaintiff to introduce a photograph depicting "the plaintiff's wife closely and affectionately surrounded by her daughter and twin sons...." *Id.* at 313, 23 A.2d 829. While reversing on other grounds, the *Buch* Court concluded the photograph was irrelevant and therefore inadmissible because "the wife was in court, appeared before the jury, and testified for her husband." *Id.*

The instant case is plainly distinguishable. Unlike in *Buch,* a significant period of time had elapsed between the date of the charged conduct and appellant's trial. The nineteen years that had passed between the crimes charged and the trial had transformed Ms. Timm from a child to a mature adult and thus significantly altered all aspects of her person. Thus, the photograph did provide the jury with a helpful "alternate form of information" to "illustrate" more fully who the victim in this case was, *Broberg,* 342 Md. at 565, 677 A.2d 602, and was admissible for that purpose.

Furthermore, as the court below held, the admission of the photograph of Ms. Timm did not pose any danger of unfair prejudice. *See Broberg,* 342 Md. at 561, 677 A.2d 602 (recognizing that while photographs of the eleven-year-old victim "were prejudicial to [the defendant's] case, they were not *unfairly* prejudicial.") (Emphasis in the original). As the State points out, the "admission of [the] photograph [was] no more prejudicial to [appellant] than having his ten-year-old victim testify against him in person."

### III.

At the close of the State's case, the circuit court amended the indictment pertaining to the 1986 incident to reflect that the conduct charged occurred at appellant's Goodnow Road apartment in November of 1986 rather than Ms. Timm's grandparents' Lynview Avenue home between May and August of that year, as alleged. The court explained:

[O]n my own initiative, I make this amendment finding it would not be a change in the character of the offenses. I

would note that the character of the offense described by
Ms. Tim[m] .... was substantially the same as that de-
scribed in her written statement [to Detective Worts] of
May 11th[, 2005,] which the Court has had an opportunity to
review, and that her in-court testimony ... differed from
the indictments ... only with respect to Thanksgiving and
the location.

I will moreover note that the defense has been aware of
the location variance since before trial, because it was told
to me prior to trial that her testimony with respect to the
1986 events [would be] that they occurred at [the] Goodnow
Road [location] and not at the Lynview Avenue location.
While it is unclear why the State has not made [a] motion
[to amend the indictment] before ... it should come as no
surprise to the defense that the indictments were to be
amended.

I will also note that the Court is not [making] any ...
substantiative changes with respect to [the] indictments....
[C]hanging the date of the offense in the indictment consti-
tutes a matter of form and not substance ... and it may be
amended in the Court's discretion without changing the
character of the offense.

Appellant claims that the circuit court erred in amending
the indictment because the amendments were not solely a
matter of form but "change[d] the character" of the charged
offense.

Rule 4–204 provides:

On motion of a party or on its own initiative, the court at
any time before verdict may permit a charging document to
be amended except that if the amendment changes the
character of the offenses charged, the consent of the parties
is required. If amendment of a charging document reason-
ably so requires, the court shall grant the defendant an
extension of time or continuance.

"Matters relating to the character of the offense
are those facts that must be proved to make the act com-
plained of a crime." *Tapscott v. State*, 106 Md.App. 109, 134,

664 A.2d 42 (1995). Consequently, the only change to an indictment that requires the consent of the parties is one that would alter the elements of the crime charged. And, thus, "[a]n indictment may be corrected without the defendant's consent if the amendment does not alter any of the elements of the offense and results in no prejudice." *Tapscott,* 106 Md.App. at 134, 664 A.2d 42. *See also Brown v. State,* 285 Md. 105, 108–110, 400 A.2d 1133 (1979); *Corbin v. State,* 237 Md. 486, 489–90, 206 A.2d 809 (1965); *Manuel v. State,* 85 Md.App. 1, 18, 581 A.2d 1287 (1990); *Gyant v. State,* 21 Md.App. 674, 680–84, 321 A.2d 815 (1974);.

We have repeatedly held that the date that an indictment alleges that the criminal conduct occurred "may be amended in the court's discretion without changing the character of the offense." *Manuel,* 85 Md.App. at 18–19, 581 A.2d 1287. *See Holbrook v. State,* 133 Md.App. 245, 260, 754 A.2d 1103 (2000) (holding that the trial court did not err in permitting the State to amend an indictment to change the date that the defendant allegedly made a threat of arson); *Boyd v. State,* 79 Md.App. 53, 68, 555 A.2d 535 (1989) (holding that an indictment could be amended to change the dates covering the inception and termination of the charged criminal conspiracy without altering the character of the offense charged); *Tucker v. State,* 5 Md.App. 32, 35, 245 A.2d 109 (1968) (declaring that "[i]t is well-established that the State is not confined in its proof to the date alleged in the charging document"). Thus, the circuit court did not abuse its discretion in amending the date stated in the indictment.

Nor does the amendment changing the location of the conduct charged from one address to another within Baltimore City change the character of the offense charged. In *Makins v. State,* 6 Md.App. 466, 470, 252 A.2d 15 (1969), we held that the trial court did not err in permitting the State to amend an indictment to reflect the correct address at which the alleged daytime housebreaking occurred. We explained: "The incident as drawn clearly charged the appellant with the crime of daytime housebreaking with intent to steal the personal goods

of another. Each of the elements of that crime was alleged, without regard to the particular apartment number specified, and none of the essential elements of the offense were changed by the amendment." *Id.* (Internal citation omitted). The same reasoning applies here. The indictment set forth the elements of the offense charged without regard to the particular house address, and therefore, "none of the essential elements of the offense were changed" by the amendment of the address.

Drawing the last arrow in his quiver, appellant cites *Thanos v. State*, 282 Md. 709, 387 A.2d 286 (1978), and claims that he was so prejudiced by the court's amendment of the indictment that the amendment, in the words of *Thanos*, "violate[d][his] constitutional right to be informed of the accusation against him in time to prepare his defense." *Id.* at 716, 387 A.2d 286. In *Thanos*, the defendant was charged with attempted shoplifting under the then-existing shoplifting statute, Md.Code, Art. 27, § 551A, which defined "shoplifting" as, among other things, "[t]o alter, remove, or otherwise disfigure any label or price tag." [4] *Id.* at 710, 387 A.2d 286. The indictment initially stated that the defendant had attempted to "alter" the price tag on the merchandise. *Id.* at 710–11, 387 A.2d 286. But the circuit court permitted the State to later amend the document to reflect that the defendant had in fact "remove[d]" the price tag as opposed to "alter[ing]" it. *Id.* at 711–12, 387 A.2d 286. The defendant was thereafter convicted of attempted shoplifting. *Id.* at 711, 387 A.2d 286.

---

4. Md.Code, Art. 27, § 551A, the then-existing shoplifting statute, provided, in part:

 (a) What constitutes. In any mercantile establishment, it is unlawful for any person

 (1) To remove any goods, wares or merchandise from the immediate place of display or from any other place within the establishment with the intent to appropriate the same to the use of the person so taking, or to deprive the owner of the use, or value, or any part thereof; or

 (4) To alter, remove, or otherwise disfigure any label or price tag with a like intent; ... and any person committing any of the acts mentioned is guilty of shoplifting.

On appeal, the defendant argued that, notwithstanding the fact that both "alter[ing]" and "remov[ing]" price tags were prohibited conduct under the same pertinent shoplifting section, 551A(a)(4), the State's amendment of the indictment from altering the price tag to removing it changed the character of the crime charged and was therefore an abuse of discretion. *See id.* at 714–15, 387 A.2d 286. The Court of Appeals agreed, holding that in "a situation in which the statute creates one offense generically ... but specifies a number of different acts, transactions, or means by which it may be committed ... [,] [each of] the various means by which that offense may be committed ... constitute[s] its 'character.'" *Id.* at 714, 387 A.2d 286 (internal citations omitted). It therefore declared: "It is inconceivable to us that the character of the offense remains unchanged, no matter which of the several proscribed acts are alleged to have been done, simply because the same generic crime is charged before and after the amendment." *Id.*

But the amendment to the indictment in *Thanos* was clearly of a distinctively different nature. We hardly need point out that, in *Thanos,* the amendment went to the character of the offense charged, whereas the amendment at issue here went only to the date and location of the offense.

Furthermore, the amendment at issue did not come as an unfair surprise to appellant. As the circuit court observed, the record establishes that appellant was on notice of the approximate date and location of the acts he was charged with committing, notwithstanding the errors in the indictment. Included in the Statement of the Charges that was given to appellant nine months before trial was Ms. Timm's statement to Detective Worts that the offenses alleged occurred not at the Lynview Avenue home, but rather at appellant's apartment in Baltimore, and not during the summer months of 1986, but rather during "one of two holidays" during the Thanksgiving or winter of her freshman year in high school.

Moreover, as the circuit court noted, appellant's counsel demonstrated her familiarity with the details of Ms. Timm's

allegations as to this date and location. During a colloquy with the court concerning appellant's motion to exclude the evidence of his uncharged juvenile conduct, appellant's counsel, in arguing that there was no clear and convincing evidence of the conduct charged, referred to Ms. Timm's statement to Detective Worts. In fact, she repeatedly directed the court's attention to that statement with respect to the 1986 conduct and, thereby, demonstrated that she knew that the conduct was alleged to have occurred at the Goodnow Road apartment during either Thanksgiving or another winter holiday of 1986.

Appellant further maintains that the broad range of dates alleged in the original indictment was prejudicial to his ability to present a defense. He states that "[t]he indictments already pushed (and may well have breached) the limit of the requirement that every indictment 'shall allege such facts in connection with the commission of the crime as will put the accused on full notice of what he is called upon to defend and establish such a record as will effectually bar a subsequent prosecution for the same crime.'" quoting *Shelton v. State,* 198 Md. 405, 409, 84 A.2d 76 (1951). But this claim was not addressed by court or counsel below, and, therefore, was not preserved for appeal. But, even if it were preserved, we have held that, in a case where allegations of childhood abuse are made many years after the alleged abuse occurred, an indictment may permissibly aver a broad range of possible dates for that abuse. *See Harmony v. State,* 88 Md.App. 306, 313–14, 594 A.2d 1182 (1991) (holding that an indictment alleging sexual abuse of a minor from "1980 through July of 1988" was not impermissibly vague); *see also, e.g., Cook v. State,* 100 Md.App. 616, 630–32, 642 A.2d 290 (1994), *rev'd on other grounds,* 338 Md. 598, 659 A.2d 1313 (1995); *Bonds v. State,* 51 Md.App. 102, 105–08, 442 A.2d 572 (1982).

## IV.

 Appellant claims that he has been deprived of meaningful appellate review because the transcript of the proceedings below contains, in appellant's words, "hundreds" of gaps, where words or phrases spoken by witnesses, counsel, and the

circuit court were omitted. He maintains that these omissions pervade the entire transcript of the trial and prevent "the entirety of [his] objections and the [circuit court's] ruling[s] with respect to them" from being meaningfully reviewed on appeal. He therefore claims he is entitled to a new trial.

We disagree. The omissions that appellant cites appear to amount to no more than snippets of dialogue. Moreover, to be entitled to a new trial, not only does appellant "bear the burden of attempting to reconstruct the record," but he must show that " 'the omissions are not merely inconsequential, but are in some manner relevant on appeal.' " *Wilson v. State*, 334 Md. 469, 476–77, 639 A.2d 696 (1994) (quoting *Smith v. State*, 291 Md. 125, 136, 433 A.2d 1143 (1981)).

Appellant did apparently "reconstruct the record." His counsel provided this Court with affidavits from appellant's trial counsel, the Assistant State's Attorney, and the circuit court judge, as well as letters from transcription services. Those documents reflect that no one was able, even after the trial videotapes and the court's trial notes were reviewed, to recall or reconstruct the exact words and phrases that are missing from the transcript.

We conclude, however, that appellant has not met the second requirement of *Wilson*, namely, that he show that the omissions were "not merely inconsequential" but were "in some manner relevant" to depriving him of meaningful appellate review. In *Wilson*, the defendant was convicted of possession of cocaine after police searched his automobile repair shop and found, in an office therein, both cocaine and drug-related paraphernalia. *Id.* at 471–72, 639 A.2d 696. At trial, his cross-examination and redirect examination were not recorded because the video tape recorder was not turned back on after a recess. *Id.* at 472, 639 A.2d 696. The reconstruction of the record based on the parties' recollections established that defendant had acknowledged during cross-examination "control to a certain extent" over the office by virtue of his ownership of the shop. *Id.* The defendant argued, on appeal, that the transcript and the reconstruction failed to

allow for meaningful appellate review of his objections to the State's cross-examination regarding the extent of his control. *Id.* at 474, 639 A.2d 696.

The Court of Appeals concluded that the defendant was entitled to a new trial based on transcript omissions because he had both made sufficient efforts to reconstruct the transcript, *id.* at 474–75, 639 A.2d 696, and had shown that the missing portion was "not inconsequential, but [was] in some manner relevant to the appeal." *Id.* at 477, 639 A.2d 696. In fact, "the portion of the transcript which could not be reproduced," the Court noted, "involved an issue that went to the very heart of the appeal, i.e., whether the petitioner was improperly cross-examined concerning his control of the premises." *Id.* The reconstruction, the Court concluded, was an inadequate substitution for the actual missing transcript of this portion of the trial because it did not provide the appellate court the precise objection, the grounds of the objection, its context, or the court's ruling. *Id.* at 477–78, 639 A.2d 696.

In the instant case, however, appellant has failed to specify what potential claims he is unable to secure meaningful appellate review of because of the missing words and phrases in the transcript. Appellant, apparently, believes he is entitled to a retrial if there is any possibility that those portions of dialogue missing from the transcript might have provided grounds for an additional claim of error; he argues: "Even assuming *arguendo* that the record is sufficient for appellant capably to argue those issues he does raise on appeal, he has been irreparably prejudiced with regard to those issues that cannot even be determined." This position ignores that he bears the burden of showing that the transcript " 'omissions are not merely inconsequential but are in some manner relevant on appeal.' " *Id.* at 476–77, 639 A.2d 696.

Although, in *Wilson,* the Court of Appeals stated that a party moving for a new trial was not required to show "specific prejudice" arising out of a trial court ruling that was not part of the transcript, *id.* at 479, *Wilson* does not stand for the proposition that the moving party need only show the bare

possibility that reversible error might have been found some-where in the missing parts of the transcript. Rather, it is clear that, to benefit from the rule articulated in *Wilson*, an appellant must demonstrate how the missing portion of the transcript is "not inconsequential but is, in some manner, relevant to his claims on appeal." Appellant has failed to do so.

Appellant's position is not only contrary to well-established case law, but it would amount to "requir[ing] reversal in each and every case where it is alleged by the appellant that portions of the trial testimony have not been preserved verba-tim for review," a proposition rejected by the Court of Appeals because "it would wreak havoc on the administration of jus-tice...." *Smith*, 291 Md. at 133, 433 A.2d 1143.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**